FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, recurrida; HERMANDAD UNIÓN DE EMPLEADOS DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* JUNTA RELACIONES DEL TRABAJO DE PUERTO RICO, recurrida.

*Números:* O-79-237, O-79-406     *Resueltos:* 30 de junio de 1981

*Laffitte & Domínguez,* abogados del recurrente Fondo del Seguro del Estado; *Elías Dávila Berríos,* abogado de la recurrente Hermandad Unión de Empleados del Fondo del

Seguro del Estado; *Federico Díaz Ortiz, César A. Vélez* y *Gladys J. Ramos Rosario*, abogados de la recurrida Junta de Relaciones del Trabajo de Puerto Rico; y *Demetrio Fernández*, abogado de los obreros querellantes.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Consideramos en estos recursos la jurisdicción de la Junta de Relaciones del Trabajo para conocer de querellas contra el Fondo del Seguro del Estado y la Hermandad Unión de Empleados del Fondo del Seguro del Estado por prácticas ilícitas fundadas en violación del convenio colectivo. Tanto el Fondo como la Hermandad fueron declarados incursos en prácticas ilícitas al concluir la Junta que en violación al convenio colectivo excluyeron de la unidad contratante a veintidós abogados del Fondo. Ambas entidades nos piden la revocación de la Decisión y Orden Final de la Junta en sendos recursos de revisión.

I

Es conveniente para un mejor entendimiento de las cuestiones aquí envueltas exponer brevemente los hechos esenciales a la controversia.

En agosto de 1969 el Fondo y la Hermandad suscribieron un Acuerdo para Elección por Consentimiento en el cual estipularon que para fines de la negociación colectiva la unidad apropiada comprendería lo siguiente:

Todos los empleados que utiliza el Fondo del Seguro del Estado en todas sus dependencias, incluídos empleados profesionales; excluídos: ejecutivos, administradores, supervisores, contadores, auditores, y toda otra persona con poderes para emplear, despedir, ascender, disciplinar o de otra manera variar el status de los empleados o hacer recomendaciones al efecto.

También suscribieron en unión a los funcionarios de la Junta un "*Addendum* al Acuerdo de Elección por Consentimiento" en los siguientes términos:

Las partes convienen, además, en que aquellas personas sobre las cuales no se llegue a un acuerdo de inclusión o exclusión de la unidad, podrán votar pero se les recusará el voto. En tal caso, el Jefe Examinador de la Junta hará una investigación de los votos recusados independientemente de si afectan o no el resultado de las elecciones, y rendirá a las partes un informe conteniendo sus conclusiones, el cual será final y obligatorio.

Un segundo *addendum* excluyó a los empleados que trabajaban a jornal por periodos de 30 días laborables o menos, los empleados confidenciales, los médicos por contrato que atendían a pacientes y cobraban por casos, y los médicos que daban servicios al patrono mediante dispensarios a todo costo.

Los abogados del Fondo quedaron comprendidos en la unidad contratante definida en el Acuerdo de Elección por Consentimiento y, desde 1970, fueron incluidos en todos los convenios colectivos acordados por las partes.

El convenio acordado para el término de julio de 1973 a junio de 1976 reconoció expresamente la facultad final de la Junta sobre la unidad apropiada disponiendo que:

La decisión de la Junta sobre los puestos incluidos en la unidad apropiada es final y no sujeta a solicitud alguna de revisión ulterior y cualquier persona empleada en un puesto similar o equivalente a los incluidos en la unidad también estarán incluidos en la misma.

En la negociación del convenio que comenzó a regir el primero de julio de 1976 las partes discutieron el problema de la constitución de la unidad apropiada y acordaron en el Art. VI que el Fondo contrataría una firma de especialistas en la materia para que realizara un estudio científico de personal. Se hizo la salvedad de que en ningún caso se afectaría adversamente la clasificación o derechos de los unionados. El estudio se efectuó por una firma privada, pero la Hermandad rehusó aceptar las conclusiones relativas a los abogados.

En adición a dicho convenio las partes también suscri-

bieron ese mismo día una estipulación a los siguientes efectos:

La Unión acepta que si en el futuro se le somete evidencia demostrativa de que *algún abogado incluído en la unidad apropiada realiza labores de carácter gerencial dicho caso será sometido a consideración del Comité de Querellas* para su decisión final. Dicha decisión será firme y obligatoria para ambas partes. (Énfasis suplido.)

El convenio y la estipulación complementaria a que hemos hecho referencia establecieron con lucidez las relaciones obrero-patronales entre el Fondo y la Hermandad.

No obstante, el 5 de enero de 1977 el Presidente de la Hermandad solicitó al Administrador Interino del Fondo la exclusión de *todos* los abogados asignados a la Sección de Adjudicaciones, por entender que éstos participaban y fijaban la política administrativa y tomaban decisiones que, a su juicio, los ubicaban dentro de la categoría de funcionarios gerenciales. El Administrador Interino acudió a las claras disposiciones del convenio recordándole a la Hermandad que la inclusión de los abogados en la unidad apropiada era final y no sujeta a solicitud alguna de revisión ulterior y que, en virtud de lo estipulado por las partes, si algún abogado realizaba labores de carácter gerencial, el foro adecuado para examinar el asunto en su fondo, lo era el Comité de Querellas. El 2 de marzo de 1977 la Hermandad volvió a plantear el asunto a la nueva Administradora del Fondo, pero esta vez solicitó la exclusión de todos los abogados y no solamente los de la Sección de Adjudicaciones.

El asunto fue sometido al Comité de Querellas para que se determinara si los abogados realizaban funciones gerenciales, en cuyo caso debían ser excluidos de la unidad apropiada. Finalmente, el Fondo y la Hermandad suscribieron una estipulación en que reseñaron las tareas principales de los abogados y declararon estar "convencidas [de] la clasificación de abogado deb[ía] exluirse de la uni-

dad apropiada de contratación colectiva y respetuosamente solicita[ron] del Comité que decret[ara] su exclusión". (¹) En vista de ello el Comité de Querellas, con la abstención de su Presidente por estar de acuerdo los representantes del Fondo y de la Hermandad, decretó la exclusión de todos los abogados de la unidad apropiada por entender que por el hecho de ser abogados ellos mantenían una relación de confidencialidad con el Fondo. A este respecto el Comité concluyó:

Indudablemente que el abogado que trabaja para el

---

(¹) La estipulación de referencia lee en lo pertinente como sigue:

"PRIMERO: Que el 4 de marzo de 1977 las partes mediante una estipulación firmada por la señora Julia Rivera de Vincenty, en su capacidad de Administradora el Fondo del Seguro del Estado y el licenciado Osvaldino Rojas Lugo como Presidente de la Hermandad-Unión de Empleados del Fondo del Seguro del Estado acordaron solicitar del Comité de Querellas que decida en forma final, si los abogados del Fondo realizan funciones gerenciales que dan base para su exclusión de la unidad apropiada y si el Comité determina que los abogados realizan sustancialmente tales funciones gerenciales deberá excluir dicha clasificación de la unidad apropiada.

SEGUNDO: Que las partes aceptan que los deberes y responsabilidades según descritos por los cuestionarios originales (OP-16) incluyen una serie de tareas comunes a todos los abogados que trabajan en la Agencia, bien sea que estén éstos en adjudicaciones, vistas públicas o subrogación. Las tareas principales de los abogados consisten en:

1—Representar al Administrador ante la Comisión Industrial (o Tribunales) sosteniendo las determinaciones del Administrador o representando los intereses de éste.

2—Realizar trabajo legal que requiere estudio y aplicación de la Ley de Compensaciones por Accidentes.

3—Contestar consultas y orientar lesionados y patronos sobre la Ley de Compensaciones por Accidentes del Trabajo.

4—Otras tareas afines propias de los abogados.

Las partes aceptan además, que los abogados de la Agencia toman decisiones de alto nivel administrativo y que su función de adjudicar casos es la de correlacionar unas determinaciones médicas con unos hechos a la luz de las disposiciones de la Ley. El abogado prepara, en unos casos, y revisa en otros, las decisiones para la firma del Director Regional. Las partes aceptan, además, que cuando los abogados comparecen ante los tribunales o ante la Comisión Industrial lo hacen en representación del Administrador en sus determinaciones o posiciones.

TERCERO: Que la clasificación de abogado no está incluída en ninguna otra unidad apropiada de las certificadas por la Junta de Relaciones del Trabajo de Puerto Rico en los casos de otros patronos en Puerto Rico."

Fondo del Seguro del Estado desempeña y tiene la relación de abogado y cliente con las concomitancias de confidencialidad que dicha relación conlleva.

Los abogados no tuvieron participación alguna en estos procedimientos y tan pronto se enteraron de la exclusión decretada recabaron del Presidente de la Hermandad que gestionara la restitución de ellos a la unidad apropiada. No obtuvieron respuesta a sus planteamientos. Por tal razón, los abogados presentaron ante la Junta de Relaciones del Trabajo cargos de prácticas ilícitas contra la Hermandad y el Fondo; contra la Hermandad, por quebrantar ésta su deber de justa e imparcial representación, y contra el Fondo, por violar éste los términos del convenio colectivo.

Los cargos presentados culminaron en la Decisión y Orden de la Junta que declaró a las recurrentes incursas en sendas prácticas ilícitas y les ordenó mantener a los abogados querellantes en la unidad apropiada del convenio hasta tanto se canalizara a través de la Junta una petición de clarificación de unidad apropiada. Esta es la Decisión y Orden cuya revocación nos piden el Fondo y la Hermandad en sus recursos de revisión.

## II

La naturaleza privilegiada de la cuestión nos lleva a considerar en primer término la impugnación de jurisdicción de la Junta para entender en el cargo de práctica ilícita. La Junta resolvió al respecto que su jurisdicción derivaba de la Ley Núm. 103 de 28 de junio de 1969 (11 L.P.R.A. sec. 8 y ss.), y que la Ley de Relaciones del Trabajo de Puerto Rico se aplicaba en su totalidad al Fondo, con excepción de las limitaciones establecidas en la mencionada Ley Núm. 103.[2] Los recurrentes sostienen, por el

---

[2] La Ley Núm. 103 contiene, entre otras, las siguientes limitaciones: 1) prohíbe la interrupción de los servicios que el Fondo presta al público; 2) dispone el arbitraje compulsorio mediante la creación de una Junta de Arbitraje; 3) establece

contrario, que dicha ley solo confirió a la Junta jurisdicción para entender en la certificación de las uniones del Fondo y asuntos relacionados con la organización de los empleados, pero no la extendió a los procedimientos de prácticas ilícitas, ya que la reservó al Comité de Querellas como el foro exclusivo para ventilar todas las disputas, quejas y agravios que surgieran al amparo del convenio.

■ El propio texto del estatuto rechaza la interpretación restrictiva que le imparten los recurrentes. En términos claros y precisos la Ley Núm. 103 confirió "jurisdicción a la Junta de Relaciones del Trabajo del Estado Libre Asociado de Puerto Rico sobre el Fondo del Seguro del Estado, para que los empleados y trabajadores de dicha agencia puedan ejercer su derecho a organizarse y a negociar colectivamente con su patrono por mediación de representantes de su propia y libre selección". Estos son precisamente los derechos que la Ley de Relaciones del Trabajo reconoce como fundamentales en la formulación de la política con respecto a las relaciones entre patronos y empleados. 29 L.P.R.A. sec. 62(3).

■ Como garantía de esos derechos de organización y negociación, la Ley de Relaciones del Trabajo prohíbe aquellas actividades que interfieren con su pleno disfrute y que constituyen por ello prácticas ilícitas del trabajo. La Junta es, por disposiciones de ley, el "tribunal adecuado, eficaz e imparcial" para implantar la política pública obrero-patronal, fomentar las prácticas y procedimientos de la negociación colectiva y evitar que cualquier persona se dedique a prácticas ilícitas del trabajo. 29 L.P.R.A. sec. 62(4). Esta última facultad es de carácter exclusivo y no le

---

la creación de un Comité de Querellas en el Convenio para la solución de disputas, quejas y agravios; 4) confiere un término mínimo de dos años a la certificación que se expida a una unión obrera para representar con exclusividad a los empleados incluidos en la unidad apropiada; 5) exige que la unión deberá estar integrada exclusivamente por empleados del Fondo, y 6) requiere que los funcionarios de la Unión sean empleados o ex-empleados del Fondo.

afecta ningún otro medio de ajuste o prevención, salvo circunstancias especiales. 29 L.P.R.A. sec. 68.

En efecto, sin la prevención por la Junta de las prácticas ilícitas del trabajo los derechos de negociación y organización de los empleados del Fondo resultarían ineficaces, quedarían en virtual desamparo. Podría argüirse, sin embargo, que los tribunales siempre conservan facultad para vindicar estos derechos. Pero precisamente la Ley de Relaciones del Trabajo sustrajo de la jurisdicción ordinaria de los tribunales esa facultad, porque se consideró que solo un organismo especializado y diseñado exclusivamente para ese propósito, como es la Junta de Relaciones del Trabajo, podría dar plena eficacia a los derechos de organización y negociación colectiva. No podemos concebir, entonces, que la Legislatura otorgara unos derechos tan fundamentales a la política pública obrero-patronal y no prohibiera al Fondo el interferir o el menoscabar en cualquier forma el libre ejercicio de esos derechos, ni tampoco confiriera jurisdicción al organismo precisamente creado para garantizar el cumplimiento de la política pública. De lo contrario, se habría conferido a la Junta una jurisdicción mutilada en su función preventiva, inconciliable con el diseño integral del estatuto.

En consecuencia, debemos concluir que la jurisdicción conferida a la Junta por la Ley Núm. 103, *supra*, se extiende tanto a los procedimientos para la certificación de la unidad apropiada como a la aplicación de los mecanismos diseñados por el legislador para garantizar los derechos de organización y negociación colectiva.

Los fundamentos anteriormente expuestos serían también suficientes para disponer del señalamiento de los recurrentes de que no es la Junta de Relaciones del Trabajo, sino el Comité de Querellas creado en el Convenio Colectivo, el foro exclusivo y único para ventilar las disputas y controversias entre las partes. Hay, sin embargo, fundamentos adicionales.

El Art. VII del Convenio Colectivo creó el Comité de Querellas como parte del procedimiento para atender y resolver en forma ordenada y justa las controversias, quejas y querellas que pudieran surgir entre las partes. El propio convenio define los términos "queja o querella" como "cualquier controversia, disputa o diferencia, que surja entre el Fondo y la Hermandad que envuelva la interpretación o la aplicación de este convenio, la inclusión o no inclusión de un puesto en la unidad apropiada en él convenida, o sobre el despido, la suspensión o cualquier otra acción disciplinaria tomada en relación con cualquier empleado". Es decir, la facultad del Comité de Querellas se refiere únicamente a la solución de controversias relacionadas con: a) la interpretación o aplicación del convenio, b) la inclusión de un puesto en la unidad apropiada, o c) el despido, suspensión o cualquier otra medida disciplinaria contra un empleado. No tiene facultad sobre prácticas ilícitas del trabajo ni para alterar en forma alguna la composición de la unidad contratante.

En realidad, nunca se suscitó propiamente una controversia entre las partes, pues, no sólo el asunto estaba excluido de la definición de "queja o querella", sino que tanto el Fondo como la Hermandad estuvieron completamente de acuerdo con la eliminación de los abogados de la unidad contratante, hasta el punto de solicitar ambos la exclusión al Comité de Querellas por estar "convencid[o]s que la clasificación de abogado deb[ía] excluirse de la unidad apropiada. . .".

## III

■ La cuestión medular del caso se refiere más bien a la composición de la unidad apropiada, cuestión de la exclusiva jurisdicción de la Junta de Relaciones del Trabajo, conforme lo dispone el Art. 5, inciso 2, de la Ley de Relaciones del Trabajo, *supra*, 29 L.P.R.A. sec. 66(2):

A fin de asegurar a los empleados el pleno disfrute de sus

derechos a organizarse entre sí, a negociar colectivamente, y de llevar a cabo los demás propósitos de este subcapítulo, *la Junta decidirá en cada caso la unidad apropiada a los fines de la negociación* colectiva. (Énfasis suplido.)

■ Las partes reconocieron expresamente esta jurisdicción de la Junta al suscribir el "Acuerdo para Elección por Consentimiento", a que hemos hechos referencia anteriormente, que incluyó a los abogados en la unidad apropiada. No podían ellos hacer caso omiso de lo que expresamente pactaron y acudir a un foro sin jurisdicción, como lo era el Comité de Querellas, con una supuesta controversia para que éste convalidara lo que a todas luces constituía una flagrante violación del convenio colectivo. Es de aplicación lo resuelto en *J.R.T.* v. *Manhattan Taxi Cabs Corp.*, 92 D.P.R. 436 (1965), a los efectos de que un Acuerdo de Elección por Consentimiento impide al patrono cuestionar posteriormente la forma en que está integrada la unidad, porque de lo contrario se permitiría a las partes ignorar deliberadamente lo convenido en un acuerdo obligatorio, daría cauce a subterfugios para obstaculizar y demorar las controversias sobre representación y tendería a derrotar, en vez de promover, los propósitos de la Ley de Relaciones del Trabajo.

Por otro lado, en el supuesto de que se tratara de una controversia legítima sobre la cual tuviera jurisdicción el Comité de Querellas, tampoco las partes observaron el procedimiento establecido en el convenio para dilucidarla. Se recordará que el mismo día que se otorgó el convenio colectivo las partes suscribieron una estipulación complementaria al efecto de que si en el futuro se le sometiera a la Hermandad evidencia de que *algún* abogado incluido en la unidad apropiada realizaba labores de carácter gerencial, dicho caso sería sometido a la consideración del Comité de Querellas para su decisión final. En consecuencia, solo podían someterse al Comité de Querellas casos individuales de abogados previa evidencia demostrativa

por parte del Fondo de que el abogado en cuestión realizaba labores gerenciales.

Surge del récord, sin embargo, que fue la Hermandad y no el Fondo quien promovió la exclusión y, no precisamente de *algún* abogado en particular, sino de *todos* los abogados incluidos en la unidad apropiada; todo ello en abierta violación del convenio.

## IV

■ Estamos de acuerdo con la preeminencia que generalmente se reconoce a los procedimientos de arbitraje en el ordenamiento laboral, justificada ampliamente por su eficacia como mecanismo para continuar la negociación colectiva mediante la solución de controversias obrero-patronales y validar así el propósito primordial de la política pública de preservar la paz industrial. *Pérez* v. *Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963); *Nazario* v. *Tribunal Superior*, 98 D.P.R. 846 (1970); *San Juan Mercantile Corp.* v. *J.R.T.*, 104 D.P.R. 86 (1975). De ahí que normalmente la Junta y los tribunales respeten los laudos arbitrales y se abstengan de intervenir en casos de violación de convenios, cuando el propio convenio establece el procedimiento de arbitraje para la solución de controversias. *J.R.T.* v. *A.C.A.A.*, 107 D.P.R. 84 (1978); *San Juan Mercantil Corp.* v. *J.R.T.*, supra; *Junta Rel. Trabajo* v. *Simmons Int'l., Ltd.*, 78 D.P.R. 375 (1955); *Simmons International, Ltd., Etc.*, D-92, 2 D.J.R.T. 238 (1953). Por supuesto, esta juiciosa norma de abstención no es inflexible y tanto la Junta como este Tribunal han formulado diversas excepciones. Véanse *J.R.T.* v. *U.T.I.G.*, 110 D.P.R. 237 (1980); *J.R.T.* v. *A.C.A.A.*, supra, y casos resueltos por la Junta citados a la pág. 91.

■ Hemos reconocido como una de las excepciones a esta norma de abstención, y ejercido nuestra jurisdicción, en los casos en que la unión ha faltado a su deber de proveer a sus representados una justa representación. Este

deber fiduciario consiste esencialmente en servir de buena fe, sin discrimen ni arbitrariedad, a los intereses de todos los miembros de la unión. *J.R.T.* v. *U.T.I.G.*, supra. La prueba desfilada ante la Junta demuestra, sin lugar a dudas, que la Hermandad quebrantó su deber fiduciario de proveer a la recurrida una justa representación en el Comité de Querellas.

Aparece del récord que el 10 de diciembre el Presidente de la Hermandad, quien es abogado y litiga casos ante el Fondo y la Comisión Industrial, le expresó a un abogado del Fondo su inconformidad por haber recomendado adversamente una petición de paga global para inversiones formulada por un cliente suyo. Los abogados del Fondo le solicitaron una reunión para aclarar la situación. La reunión degeneró en un agravio del Presidente de la Hermandad a todos los abogados. Días después éste solicitó formalmente al Fondo que cesara el descuento de cuotas a los abogados de adjudicaciones, por entender que éstos debían ser excluidos de la unidad apropiada. La Hermandad no informó estas gestiones a los recurridos ni les dio participación en los procedimientos. Tampoco respondió a los requerimientos de éstos al enterarse del laudo, para que se les restituyera a la unidad contratante. Debemos puntualizar que durante todo el historial de negociación colectiva en este caso los abogados llevaban a cabo las mismas tareas y desempeñaban las mismas funciones. Desde que se estipuló la unidad apropiada en el Acuerdo de Elección por Consentimiento, a que hicimos referencia al principio de esta opinión, hasta el día de hoy no ha habido variación alguna en las tareas que llevan a cabo los abogados del Fondo ni modificación en las funciones que razonablemente pudieran servir de fundamento a la Hermandad para solicitar la exclusión de ellos de la unidad contratante. Tal actuación arbitraria lesionó los intereses de los recurridos y constituye un quebrantamiento del deber de justa representación, que justificaba

de por sí solo a la Junta el no poner en vigor el laudo. *J.R.R.* v. *U.T.I.G.*, supra.

En resumen, 1) la falta de jurisdicción del Comité de Querellas para emitir el laudo, 2) el desvío de los procedimientos seguidos por el Fondo y la Hermandad en contravención al convenio, y 3) el quebrantamiento del deber de justa representación por la Hermandad, impiden a los recurrentes enarbolar el laudo como bandera triunfal contra el ejercicio de jurisdicción por la Junta de Relaciones del Trabajo.

## V

El Fondo insiste en que no incurrió en práctica ilícita, porque su actuación se limitó a llevar al Comité de Querellas la solicitud de la Hermandad para que se excluyera a los recurridos de la unidad contratante, por lo que, a su juicio, su actuación fue prudente y razonable y no constituye violación de convenio. No vamos a repetir lo ya discutido. Basta recordar que cuando las partes estipulan un Acuerdo de Elección por Consentimiento, como en este caso, el patrono no puede cuestionar posteriormente la forma en que está integrada la unidad contratante. *J.R.T.* v. *Manhattan Taxi Cabs, Corp.*, supra.

Señala además el Fondo, como error, el que la Junta no resolviera que los abogados no tienen derecho a la negociación colectiva. Arguye que los abogados no son "empleados" dentro del significado de dicho término en la Ley de Relaciones del Trabajo, por estar ellos íntimamente identificados con la gerencia y por actuar en una relación de confidencialidad con el Fondo. Los recurridos rechazan este señalamiento en un competente estudio sobre la cuestión.

La Junta, sin embargo, limitó su decisión a determinar solamente si el Fondo y la Hermandad habían incurrido en sendas prácticas ilícitas del trabajo, fundándose en que esta era la única cuestión envuelta en los cargos presenta-

dos ante sí y en que la exclusión de los abogados de la unidad apropiada debería resolverse en su día, cuando se le presentara una petición de clarificación de unidad. Conviene reproducir del alegato de la Junta, a las págs. 40–41, su posición al respecto:

No puede sostenerse racionalmente, por ser de naturaleza inconcebible, el que la propia Junta teniendo ante sí unos cargos que contienen imputaciones de comisión de prácticas ilícitas de trabajo ignore la obligación ministerial que le impone la ley con respecto al Procedimiento de Prevención de Prácticas Ilícitas de Trabajo y a iniciativa propia instituya un Procedimiento distinto a lo solicitado por los promoventes. Sabido es que la Junta actúa solamente cuando se le solicita formalmente que lo haga y que en los casos de Prácticas Ilícitas de Trabajo no se discuten y resuelven casos de representación de agente de negociación colectiva y vice-versa.

■ Consideramos correcta la decisión de la Junta de posponer la consideración en los méritos de esta cuestión para cuando se presente un caso de clarificación de unidad.

Por último, habiéndose concluido anteriormente que la Ley Núm. 103, *supra*, confirió jurisdicción a la Junta de Relaciones del Trabajo tanto para la certificación de la unidad apropiada como para entender en procedimientos de prácticas ilícitas del trabajo, no es necesario considerar si la Junta incurrió en error al resolver que el Fondo es una "instrumentalidad corporativa" bajo la Ley de Relaciones del Trabajo, *supra*, y los criterios establecidos en la jurisprudencia. Veánse *A.A.A.* v. *Unión Empleados A.A.A.*, 105 D.P.R. 437 (1976); *J.R.M.* v. *J.R.T.*, 108 D.P.R. 448 (1979). Véase, además, R. Markus, *La Negociación Colectiva en las Corporaciones Públicas y el Fondo del Seguro del Estado*. (Estudio preparado por encomienda de la Comisión del Gobernador para Estudiar Relaciones del Trabajo en el Servicio Público en Puerto Rico) 1974.

*En orden a los anteriores fundamentos se dictará sen-*

*tencia que confirme la Decisión y Orden de la Junta de Relaciones del Trabajo.*

Los Jueces Asociados Señores Rigau y Negrón García no intervinieron.