TEXTO COMPLETO DE LA SENTENCIA
El 2 de diciembre de 2004, la Unión Independiente Auténtica de Empleados de la AAA (UIA) presentó ante nos un escrito de Apelación en el que solicita se revoque la sentencia dictada por el Tribunal de Primera Instancia el 3 de noviembre de 2004. La misma fue archivada en autos y notificada a las partes el 4 de noviembre de 2004. El 21 de diciembre de 2004, el juez superior, Non. Oscar Dávila Suliveres, compareció mediante un escrito titulado In Re: Trámite Apelativo del Caso, donde discutió el primer señalamiento de error que se imputa al Tribunal sentenciador por no haberse inhibido del caso. El 3 de enero de 2005, los Procuradores Generales presentaron su alegato. Ese mismo día, la Autoridad de Acueductos y Alcantarillados solicitó prórroga para presentar su alegato. El 26 de enero, este Tribunal le concedió un término adicional de treinta (30) días. Finalmente, el 26 de febrero de 2005, radicó su escrito.
Con el beneficio de la comparecencia de las partes y luego de evaluar sus planteamientos, así como el derecho vigente, procedemos a confirmar la Sentencia apelada.
I
La Autoridad de Acueductos y Alcantarillados (en adelante AAA) es una corporación pública creada al amparo de la Ley Núm. 40 de 1 de mayo de 1945, según enmendada, 22 L.P.R.A. see. 141 et. seq. Está capacitada para demandar y ser demandada. 22 L.P.R.A. see. 144. Por su parte, la Unión Independiente Auténtica de Empleados de la AAA (UIA) es una organización obrera que representa exclusivamente a los empleados regulares y transitorios de la AAA que están dentro de la unidad apropiada, según ésta se define por el convenio colectivo. Está certificada por la Junta de Relaciones del Trabajo de Puerto Rico mediante certificación de 8 de diciembre de 1967.
El convenio colectivo otorgado entre la AAA y la UIA se firmó el 28 de septiembre de 2000 y tenía fecha de vigencia de 1 de julio de 1998. En el Artículo XXXI disponía que su fecha de expiración sería el 30 de junio de 2003. En caso de que alguna de las paites quisiera modificarlo, tendría que someter las enmiendas por escrito no más tarde de seis (6) meses antes de su vencimiento. De no mediar dicha notificación, se entendería prorrogado por un año adicional. En caso de que tuvieran la intención de enmendarlo, la negociación comenzaría a más tardar sesenta (60) días laborables después de sometidas por escrito las enmiendas.
*167 En cumplimiento con lo anteriormente dispuesto, la UIA inició el proceso de negociación de un nuevo convenio colectivo, impidiendo así una renovación automática del vigente. Como parte del proceso, Ondeo de Puerto Rico, quien' era el anterior administrador del sistema de acueductos y alcantarillados, llegó a unos acuerdos con la ULA. La Junta Directiva de la AAA nunca aprobó dichos acuerdos.
El 18 de mayo de 2004, el Sr. Juan Agosto Alicea, Presidente de la Junta de Directores de la AAA, le comunicó a la UIA la determinación de dicha Junta de que efectivo inmediatamente, los artículos VI - Taller Unionado; VII - Deducción de Cuotas de la Unión; VIII - Delegados y Representantes de la Unión, en lo relacionado con la licencia de unión con paga, y XXV sección B - Seguro por Incapacidad no Ocupacional Temporera y Otros Beneficios de los Empleados, quedaban sin efecto, ya que estaban vencidos.
El 21 de mayo de 2004, Emmalind García García, en aquel momento Directora de Recursos Humanos de la AAA, envió sendas cartas a los apelantes Héctor R. Lugo, Andrés Carrasquillo, Jr., Elba L. García Pastrana, Víctor Cornier Pérez, Juan R. Ramos Hernández, Luis A. Andino Delbrey, Jesús Caraballo Ortiz, Francisco Martínez Irizarry, Jorge L. Urbina Acevedo, Juan Roldán Vega, René Rodríguez Carrión, José J. Aquino Mulero, Jesús M. Díaz Allende, Diana R. Rivera Rodríguez, Noel Cabán Avilés, José M. Ramos García, Gladys Serrano Quintana e Irma G. Feliú Miranda. En la comunicación les notificó que debido a que la Junta de Directores de la AAA había dejado sin efecto el Artículo VIII del último convenio colectivo, la licencia de unión o licencia sindical de cada uno de ellos sería sin paga. Esto es, no devengarían paga por el tiempo trabajado en la ejecución de sus funciones en sus respectivos puestos en la AAA.
El 9 de julio de 2004, la UIA y los dieciocho (18) unionados que también ocupan cargos sindicales (aquí apelantes), presentaron una demanda ante el Tribunal de Primera Instancia. En ella solicitaron que se dictara una orden de entredicho provisional, ordenándole a la AAA que mantuviera en efectividad ciertas cláusulas del convenio colectivo firmado el 28 de septiembre de 2000. Según los términos del Artículo XXXI, dicho convenio colectivo rigió hasta el 30 de-junio de 2003, fecha en que expiró.
Le requirierón al Tribunal que ordenara a la AAA pagar retroactivamente al 18 de mayo de 2004, las cuotas y la aportación del uno y medio por ciento (IV2 %) para beneficios uniformes, que alegadamente le adeudaba a la UIA; que cumpliera con la cláusula de taller unionado; escogiera con el Sindicato a los nuevos árbitros del Comité de Querellas; revirtiera la licencia de unionado sin paga a con paga y pagara a los funcionarios sindicales los salarios y demás, haberes dejados de devengar con las penalidades, intereses legales, costas, gastos y honorarios de su abogado.
También solicitaron que se ordenara a la AAA que cesara de violar los derechos constitucionales de los unionados y que se les concediera una indemnización de setenta y cinco mil dólares ($75,000) a cada apelante y se les eximiera de la prestación de la fianza requerida por ley. En la alternativa, le solicitaron al Tribunal que señalara una vista pala que las partes mostraran causa por la cual no debía expedirse el interdicto preliminar y permanente.
El 13 de octubre se celebró la vista en la que las partes tuvieron la oportunidad de argumentar sus respectivas posiciones. La AAA y su Junta de Directores (parte apelada) expusieron sus razones para que se dictara sentencia sumaria, atacando la jurisdicción del Tribunal, mientras que la parte apelante expuso sus razones por las cuales, a su entender, el Tribunal tenía jurisdicción. En corte abierta, el Tribunal desestimó la demanda incoada por carecer de jurisdicción para atender la controversia planteada, ya que la jurisdicción primaria exclusiva recaía en la Junta de Relaciones del Trabajo. Ordenó, además, a los apelantes que le pagaran a los aquí apelados la cantidad de cinco mil dólares ($5,000.00) en concepto de honorarios de abogados por la frivolidad del pleito incoado. El 3 de noviembre de 2004, el Tribunal dictó por escrito la anterior decisión.
De esta determinación, los apelantes acuden ante nos. En esencia, plantean tres errores, a saber:

*168
“a. El TPI cometió error craso y manifiesto de Derecho, al no abstenerse de entender en este caso y hasta dictar Sentencia Sumaria final desestimatoria de la demanda, aun cuando tenía un claro conflicto ético, habiendo sido previamente ejecutivo de una corporación subsidiaria de Triple S y conocedor del hecho público de que el presente conflicto huelgario en la AAA, fue motivado porque la gerencia de esta última contrató unilateralmente el plan médico Triple S para los miembros de la UIA; con su proceder, el TPI actuó en contra de los Cánones de Etica Judicial, por lo cual este Tribunal debe anular y revocar la Sentencia apelada.

b. El TPI cometió error craso y manifiesto de Derecho, al dictar Sentencia Sumaria Final desestimatoria de la demanda, si entre las partes, existe controversia acerca del hecho cardinal de si el Convenio Colectivo entre la AAA y la UIA expiró o no; su dictamen resultó contrario a las Reglas 36.3 y 36.4 de Procedimiento Civil, 23 L.P.R.A. Ap. Ill, y su jurisprudencia interpretativa.

c. El TPI cometió error craso y manifiesto y abusó de su discreción, al imponerle condena de pago solidario de cinco mil dólares ($5,000.00) en honorarios de abogado, por temeridad, a la parte apelante, que no incurría en conducta temeraria, a tenor de la parte apelada; tal disposición resultó contraria a la Regla 44.1 (d) de Procedimiento Civil, según enmendada, 32 L.P.R.A. Ap. Ill, y a su jurisprudencia interpretativa. ”

II
Dentro de la esfera administrativa existe la doctrina de abstención judicial conocida como la doctrina de jurisdicción primaria. Las doctrinas de jurisdicción primaria y de agotamiento de remedios administrativos están estrechamente entrelazadas, aunque son distintas. La primera se refiere a quién tienen jurisdicción original para considerar la reclamación, si el organismo administrativo o los tribunales. Por su parte, la doctrina de agotamiento de remedios administrativos se refiere a la etapa del procedimiento administrativo en que los tribunales deben intervenir para revisar la acción administrativa.
La doctrina de jurisdicción primaria tiene, a su vez, dos vertientes: la jurisdicción primaria exclusiva y la jurisdicción primaria concurrente. En la primera, la ley dispone que el organismo administrativo será el único que tendrá jurisdicción inicial para examinar la reclamación. La jurisdicción concurrente se da cuando la ley permite que la reclamación se inicie, bien en el foro administrativo o bien en el judicial. Rivera Ortiz v. Mun. de Guaynabo, 141 D.P.R. 257 (1996); Aguilú Delgado v. P.R. Parking System, 122 D.P.R. 261, 266 (1988).
La doctrina de jurisdicción primaria tiene el propósito de guiar a los tribunales para determinar si la cuestión de hecho a ser considerada requiere el ejercicio de la discreción administrativa o aplicación del conocimiento especializado que la agencia posee. En este caso, la reclamación debe considerarse inicialmente por el foro administrativo correspondiente. Asoc. Pesc. Pta. Figueras v. Marina Pto. del Rey, 155 D.P.R. _ (2002); 2002 J.T.S. 4; Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347 (1988). Dicha doctrina presupone no haberse iniciado proceso alguno por las partes antes de presentarlo en la agencia administrativa, ya que es ésta quien disfruta de la discreción o conocimiento especializado para entender en los asuntos planteados. Asoc. Pesc. Pta. Figueras v. Marina Pto. del Rey, supra.
Por otro lado, la doctrina de jurisdicción primaria no tiene que ver con el momento o la ocasión de la revisión judicial de la acción administrativa. Dicha doctrina ayuda a los tribunales a determinar qué organismo debe hacer una determinación inicial del asunto en controversia. Ortiz v. Panel sobre el FEI, 155 D.P.R. _ (2001); 2001 J.T.S. 137; Vega v. J. Pérez & Cía, Inc., 135 D.P.R. 746, 758 (1994); Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716, 722 (1982); E.L.A. v. 12,974.78 Metros Cuadrados, 90 D.P.R. 506 (1964). Es decir, hay que determinar si la acción debe ser presentada ante la agencia concernida o ante el tribunal. Ortiz v. Panel sobre el FEI, supra.
El Tribunal de Primera Instancia tiene autoridad para entender en una acción que presente una controversia justiciable. Sin embargo, la Asamblea Legislativa tiene autoridad para limitar la jurisdicción primaria de los *169 tribunales sobre ciertas materias asignándole la jurisdicción primaria exclusiva sobre esa materia a un organismo administrativo mediante expresa disposición de ley, o por implicación necesaria de la misma. Junta Dir. Cond. Montebello v. Fernández, 136 D.P.R. 223, 230 (1994). Cuando una ley le confiere jurisdicción primaria exclusiva a una agencia sobre una materia, los tribunales no tienen autoridad para intervenir en primera instancia en los casos sobre esa materia. Ferrer Rodríguez v. Figueroa, 109 D.P.R. 398 (1980); véase, además, Demetrio Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. ed., Bogotá, Forum, 2001, pág. 437 y ss. El hecho de que se dilaten los procedimientos excesivamente en la Agenci, no es un fundamento válido para preterir el trámite administrativo cuando existe jurisdicción primaria exclusiva. Rivera Ortiz v. Mun. de Guaynabo, supra, a la pág. 273 (1996).
III
La Ley Núm. 130 de 8 de mayo de 1945, conocida como la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 61 et. seq., según enmendada, le confiere la jurisdicción exclusiva a la Junta de Relaciones del Trabajo en casos de prácticas ilícitas de trabajo. 29 L.P.R.A. see. 68 (a). El artículo 7 (a) de la referida ley dispone: “la Junta tendrá facultad, según se dispone en la sección 70 de este título, para evitar que cualquier persona se dedique a cualesquiera de las prácticas ilícitas de trabajo que se enumeran en la sección 69 de este título. Esta facultad será exclusiva y no la afectará ningún otro medio de ajuste o prevención.” 29 L.P.R.A. see. 68 (a). Por su parte, el Artículo 8 de la misma ley incluye como parte de las prácticas ilícitas de trabajo la violación de los términos de un convenio colectivo. 29 L.P.R.A. see. 69 (f).
En el caso F.S.E v. J.R.T., 111 D.P.R. 505, 512 (1981), nuestro Tribunal Supremo reiteró que la Junta de Relaciones del Trabajo es, por disposición expresa de su estatuto habilitador, el “tribunal adecuado, eficaz e imparcial” para implantar la política pública obrero-patronal, fomentar las prácticas y procedimientos de negociación colectiva y evitar que cualquier persona se dedique a prácticas ilícitas del trabajo. 29 L.P.R.A. see. 62 (4). Además, expresó que esta última facultad es de carácter exclusivo y no le afecta ningún otro medio de ajuste o prevención. 29 L.P.R.A. 68, F.S.E. v. J.R.T., supra. Así mismo, resolvió en P.R.T.C. v. Unión Indep. Emp. Telefónicos, 131 D.P.R. 171 (1992), que cuando la controversia está enmarcada" dentro de un conflicto obrero-patronal, la actividad será protegida por la Ley de Relaciones del Trabajo de Puerto Rico y corresponderá a la Junta asumir jurisdicción exclusiva.
ÍV
Por su parte, la Ley Núm. 50 de 4 de agosto de 1947, según enmendada, 29 L.P.R.A. see. 101-109, le prohíbe expresamente a los tribunales éxpedir órdenes interdíctales o de injunction en casos de huelgas o disputas obrero-patronales. Así, el Art. 1 de la referida disposición estatutaria establece que: “[njingún tribunal de justicia de Puerto Rico tendrá jurisdicción para expedir orden alguna de entredicho o injunction preliminar o permanente en un caso que envuelva o que surja de una disputa obrera, salvo de estricta conformidad con las disposiciones de este capítulo. 29 L.P.R.A. 101.
El Art. 5 dispone que solamente se permitirá, por vía de excepción, que los tribunales expidan órdenes interdíctales en tales conflictos laborales cuando: (1) exista violencia o fraude inminente; (2) en la prevención de actos criminales; (3) en los casos en que la Policía certifica que no pueda brindar una protección adecuada a la propiedad del solicitante; y (4) cuando exista una grave emergencia por motivo de la cual estén claramente en peligro la salud o la seguridad pública. 29 L.P.R.A. see. 105; P.R.T.C. v. Unión Indep. Emp. Telefónicos, supra.
Y
Según la doctrina de jurisdicción primaria exclusiva, el foro adecuado para obtener el cumplimiento de las obligaciones contraídas en virtud de un convenio colectivo es la Junta de Relaciones del Trabajo. Ello surge de la propia ley que establece que una violación de un convenio colectivo es una práctica ilícita del trabajo. P.R.T. C. v. J.R.T., 86 D.P.R. 382 (1962). La jurisdicción de la Junta de Relaciones del Trabajo para entender en casos que envuelven prácticas ilícitas del trabajo es exclusiva, y le ha sido expresamente conferida por el Art. 7 (a) de *170 la Ley de Relaciones del Trabajo de Puerto Rico, supra. Así quedó evidenciado en Martínez Rodríguez v. AEE, 133 D.P.R. 986 (1993), donde el Tribunal Supremo resolvió que las controversias relacionadas al pago o no pago de licencias sindicales y de sueldos se deben presentar ante la Junta de Relaciones del Trabajo, que es el organismo con jurisdicción primaria exclusiva para atender estas controversias.
Todas las reclamaciones hechas por los aquí apelantes al Tribunal de Primera Instancia fueron imputaciones de prácticas ilícitas, ya que incluian la alegada violación por parte de la AAA del último convenio colectivo otorgado por las partes. Surge de la propia Ley de Relaciones del Trabajo y de la jurisprudencia anteriormente citada, que la Junta de Relaciones del Trabajo es el organismo que tiene jurisdicción primaria exclusiva para atender la controversia planteada. Por lo tanto, carecía el Tribunal de Primera Instancia de jurisdicción en ley para resolver el caso. Ante este escenario, no erró el Tribunal sentenciador al dictar sentencia sumaria desestimatoria.
Con relación a los interdictos en disputas laborales, el Tribunal de Primera Instancia también carecía de jurisdicción por motivo de la propia Ley Núm. 50, supra. En su Art. 1, ésta le prohíbe a los tribunales considerar y emitir interdictos cuando se trata de una disputa obrero-patronal. La ley expresamente dispone que, vía excepción, puede emitir remedios interdictales en determinadas ocasiones como las anteriormente mencionadas. En el presente caso, no se presentó ninguna de ellas, razón por la cual el Tribunal estaba imposibilitado de emitir algún interdicto.
VI
De otra parte, el Canon XII de Ética Judicial, 4 L.P.R.A. Ap. IY - A, dispone que un Juez no debe entender en un caso cuando tenga prejuicio o parcialidad; cuando esté interesado en el resultado del caso; por haber sido abogado o asesor de alguna de las partes o sus abogados; por haber presidido el juicio del mismo caso en un Tribunal inferior; por existir parentesco con las paites o sus abogados; porque intervenga en el procedimiento alguna persona que le haya gestionado o facilitado un préstamo; o por cualquier otra causa que razonablemente pueda arrojar dudas sobre su imparcialidad o que mine la confianza pública en el sistema de justicia. Según el Canon, el Juez debe inhibirse tan pronto conozca la razón de la inhibición.
Los apelantes plantean que el juez debió inhibirse de atender el caso, ya que éste había sido en ocasión anterior ejecutivo de una corporación subsidiaria de Triple S. Esta última provee el plan médico de la Unión, cambio de plan médico que ocasionó un conflicto huelgario entre las partes. Sin embargo, en el presente caso, Triple S no es parte del pleito. De hecho, no existe ninguna alegación que esté relacionada con Triple S o con el plan médico de la Unión. Este caso versa sobre una disputa laboral e imputaciones de prácticas ilícitas por parte del patrono. Por ello, es improcedente el planteamiento sobre la inhibición del juez para adjudicar el caso.
Nos resta por discutir el tercer error planteado, sobre la imposición de honorarios de abogado por temeridad. Respecto a esto, la Regla 44.1 (d) de las de Procedimiento Civil dispone que:

“(d) En caso de que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable, el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. 32 L.P.R.A. III, R. 44.1 (d). ”

El concepto "temeridad" ha sido ampliamente definido por el Tribunal Supremo de Puerto Rico. En términos generales se considerará temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. Blas v. Hosp. Guadalupe, 146 D.P.R. 267 (1998); Torres Ortiz v. E.L.A., 136 D.P.R. 556 (1994). La temeridad no está definida en la regla antes citada, pero el Tribunal Supremo de Puerto Rico ha expresado que " la temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia". Jarra Corporation v. Axxis Corp., 155 D.P.R. _ (2001), 2001 J.T.S. 167.
*171 De igual manera, ha expresado que la imposición de honorarios de abogado por temeridad persigue castigar a aquellos litigantes que obligan a otras personas a incurrir en gastos innecesarios al interponer pleitos frívolos, o alargar innecesariamente aquellos ya radicados. La imposición de honorarios por temeridad descansa en la discreción del Tribunal. Sin embargo, en aquellos casos en que los tribunales inferiores abusen de su discreción, los tribunales apelativos podrán revisar su actuación. Id. Corresponde a la parte apelante demostrar dicho abuso de discreción. CNA Casualty de P.R. v. Torres Díaz, 141 D.P.R. 27 (1996). Sabido es, también, que la partida de honorarios de abogado concedida no se variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. Ramírez Anglada v. Club Cala de Palmas, 123 D.P.R. 339 (1989).
En el presente caso, los apelantes actuaron en forma temeraria. Presentaron ante el Tribunal de Primera Instancia una petición para que se expidiera un interdicto y alegaron que el patrono había dejado sin efecto varias cláusulas del convenio colectivo. Si tenemos en consideración que la presente disputa está enmarcada dentro del conflicto obrero-patronal y que la Ley de Relaciones del Trabajo define el ámbito de jurisdicción del foro adecuado, debemos concluir que los apelantes pretirieron el trámite administrativo y acudieron directamente al foro judicial. Así, incumplió con la Ley que expresamente le ordena que el foro competente con jurisdicción exclusiva sobre dicha materia lo es el administrativo.
VII
Por los fundamentos anteriormente esbozados, se confirma la sentencia apelada.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones