JUNTA DE RETIRO PARA MAESTROS, recurrente, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, recurrida.

*Número:* O-78-192          *Resuelto:* 13 de febrero de 1979

*Nigaglioni, Palou & Ledesma* y *Jorge Calero Blanco,* abogados de la Junta de Retiro para Maestros, recurrente; *José Velaz Ortiz, Federico Díaz Ortiz, Gladys J. Ramos Rosario* y *César Juan Almodóvar,* abogados de la Junta de Relaciones del Trabajo de Puerto Rico; *Federico Rivera Sáez,* abogado de la Hermandad de Empleados de la Junta de Retiro para Maestros.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En el año 1973 la Junta de Relaciones del Trabajo de Puerto Rico, en adelante La Junta, resolvió que los empleados de la Junta de Retiro para Maestros, en adelante La Junta de Retiro, no podían negociar colectivamente con dicha Junta de Retiro. Se basó para ello, según explica la Junta de Relaciones del Trabajo en su Decisión y Orden de Elecciones, en su constante posición ante el problema evidenciada en la solución de numerosos casos similares que había resuelto y que cita a la página 18 de su mencionada Decisión.

En el 1978, a nueva petición de la Hermandad de Empleados de la Junta de Retiro, la Junta de Relaciones del Trabajo resolvió lo contrario mediante su citada Decisión y Orden de Elecciones, de 28 de abril de ese año. En esta segunda ocasión el Presidente de la Junta de Relaciones del Trabajo desestimó la mencionada petición de la Hermandad de Empleados, siguiendo las decisiones de la Junta, pero en esta ocasión la Junta revocó la decisión de su Presidente.

450

Explica la Junta que su cambio de parecer se debió a la decisión de este Tribunal en el caso de *A.A.A.* v. *Unión de Empleados A.A.A.*, 105 D.P.R. 437 (1976). Se recordará que en aquel caso se discutía la validez de un *injunction* contra una huelga de empleados de la Autoridad de Acueductos y allí se resolvió que el *injunction* era válido, al amparo de la Ley Núm. 50 de 4 de agosto de 1947, 29 L.P.R.A. sec. 101 y ss., porque la huelga estuvo acompañada de violencia y sabotaje. En adición el Tribunal declaró inconstitucional la Ley Núm. 142 de 30 de junio de 1961, la cual prohibía la huelga a los empleados de la Autoridad de Acueductos. El Tribunal concluyó que dichos empleados tenían constitucionalmente garantizados los derechos a huelga y a negociación colectiva.[1]

Como más adelante veremos, entre ese caso y el de autos las cuestiones son distintas y también la naturaleza de ambos organismos: la Autoridad de Acueductos y Alcantarillados y la Junta de Retiro para Maestros. La analogía extensiva que la Junta de Relaciones del Trabajo hizo en relación con ambos casos fue excesiva.

Para determinar si la Hermandad de Empleados podía negociar colectivamente con la Junta de Retiro para Maestros es necesario determinar si la Junta es un patrono dentro del significado de la Ley de Relaciones del Trabajo de Puerto Rico. De esa determinación dependerá de si la Junta de Relaciones del Trabajo tiene o no jurisdicción para emitir la Orden que emitió.

La Ley de Relaciones del Trabajo de Puerto Rico define el término "patrono" en la siguiente forma:

(2) "El término 'patrono' incluirá ejecutivos, supervisores y a cualquier persona que realizare gestiones de carácter ejecutivo en interés de un patrono directa o indirectamente, pero no incluirá excepto en el caso de las instrumentalidades corporativas

---

[1] Sobre este particular la opinión del Tribunal no fue unánime. Véase la opinión disidente del Juez Asociado Señor Rigau, 105 D.P.R. 460 (1976).

del Gobierno de Puerto Rico como más adelante se definen, al Gobierno ni a ninguna subdivisión política del mismo; Disponiéndose, que incluirá, además, a todo individuo, sociedad u organización que intervenga a favor de la parte patronal en cualquier disputa obrera o negociación colectiva." Art. 2 Sec. (2); 29 L.P.R.A. sec. 63(2).

La misma Ley define "instrumentalidades corporativas" de la siguiente forma:

(11) "El término 'instrumentalidades corporativas' significa las siguientes corporaciones que poseen bienes pertenecientes a, o que están controladas por, el Gobierno de Puerto Rico: La Autoridad de Tierras, la Compañía Agrícola, el Banco de Fomento, la Autoridad de Fuentes Fluviales, la Compañía de Fomento de Puerto Rico (Compañía de Fomento Industrial), la Autoridad de los Puertos, la Autoridad de Comunicaciones, y las subsidiarias de tales corporaciones, e incluirá también las empresas similares que se establezcan en el futuro y sus subsidiarias, y aquellas otras agencias del Gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario." 29 L.P.R.A. sec. 63(11).

(1) Correctamente entendió la Junta de Relaciones del Trabajo en su Decisión de 28 abril 1978 que la Junta de Retiro para Maestros no es una de las corporaciones públicas que la Ley de Relaciones del Trabajo menciona por sus nombres en el citado Inciso 11 cuando habla de las instrumentalidades corporativas. (2) Tampoco es subsidiaria de ninguna corporación pública enumerada en dicha Ley. (3) Como veremos, por su razón de existir y por sus propósitos no puede considerarse similar a dichas instrumentalidades corporativas.

(4) Pero ¿es acaso la Junta de Retiro para Maestros un organismo que se dedica a negocios lucrativos o tiene por objeto beneficio pecuniario? Veamos pues qué es la Junta de Retiro para Maestros y para qué fines existe.

La Junta tiene sus antecedentes en una Ley de 28 de febrero de 1902 la cual facultó a un Comité de Maestros para

administrar los fondos de pensiones de jubilaciones del Magisterio. Dicha Ley creó ·un Comité formado por 3 maestros nombrados por el Comisionado de Instrucción para atender a las solicitudes en reclamación de pensiones y jubilaciones y formar los expedientes oportunos correspondientes.—*Estatutos Revisados y Códigos de Puerto Rico* (1902), pág. 114. Véase también la Ley de 12 de marzo de 1903 y la Ley de 9 de marzo de 1905.

La Junta fue formalmente creada por la Ley Núm. 62 de 5 de diciembre de 1917, Leyes de ese año Vol. II, pág. 397; Opinión Núm. 16 del Secretario de Justicia de Puerto Rico, Hon. Hiram R. Cancio, de 7 de marzo de 1961. El texto vigente sobre la Junta de Retiro se encuentra en la "Ley de Retiro para Maestros", Ley Núm. 218 de 6 de mayo de 1951, según enmendada, 18 L.P.R.A. sec. 321 y ss. Dicha Ley establece un sistema de anualidades y pensiones para maestros. Son miembros del sistema los maestros en servicio activo, los que ocupen puestos en la Junta de Retiro y los maestros pensionados. Puede verse que su "clientela", por decirlo así, no está abierta al público en general como lo está la de la Autoridad de las Fuentes Fluviales y la de la Autoridad de Acueductos y Alcantarillados o la del Banco de Fomento, o la de la Autoridad de los Puertos. Su matrícula son los maestros de Puerto Rico.

Dicha Ley dispone que la administración y la responsabilidad del buen funcionamiento del sistema de anualidades y pensiones para maestros recae sobre la Junta de Retiro para Maestros de Puerto Rico. La Ley dispone la composición de la Junta en la siguiente forma:

"(a) El Secretario de Instrucción Pública de Puerto Rico, o su representante, miembro *ex-officio;*

(b) El Secretario de Hacienda de Puerto Rico, o su representante, miembro *ex-officio;*

(c) El Presidente de la Asociación de Maestros de Puerto Rico, o su representante, miembro *ex-officio;* y

(d)  Dos miembros del Sistema, uno de los cuales deberá ser un maestro pensionado, nombrados por el Gobernador de Puerto Rico, con el consejo y consentimiento del Senado, por un término de cuatro (4) años. Estos miembros ocuparán sus cargos hasta que sus sucesores sean nombrados y tomen posesión de los mismos."—18 L.P.R.A. sec. 326.

Antes de pasar a otras consideraciones dilucidemos también si la Junta está o no cubierta por la Ley de Personal. Ninguna de las leyes anteriores creadoras de las Juntas que de tiempo en tiempo han estado a cargo de administrar el sistema de pensiones de los maestros contiene expresión alguna en cuanto a si la Junta estaba o no sujeta a la ley o leyes de personal. Expresiones en ese sentido constituyen la excepción pues cuando la ley nada expresa se entiende que la agencia pública está sujeta a la Ley de Personal. El patrón seguido por nuestras leyes de personal ha sido el de señalar específicamente las agencias que quedan *excluidas* de la Ley de Personal y disponer que todas las demás agencias públicas quedan sujetas a dichas leyes. Véanse Ley de 13 de febrero de 1907; Ley Núm. 88 de 11 de mayo de 1931; Ley Núm. 345 de 12 de mayo de 1947 (3 L.P.R.A. secs. 648 y 649); Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. secs. 1338 y 1342).

En vista de esto la interpretación correcta era entender, como lo entendieron el Contralor de Puerto Rico y el Secretario de Justicia, que el personal de la Junta de Retiro siempre estuvo sujeto a las leyes de personal. En la práctica no se consideró así, sin embargo, pero en el Informe del Contralor de Puerto Rico del año 1958 dicho funcionario concluyó, como era de esperarse, que ese personal estaba sujeto a la Ley de Personal. Ese criterio fue compartido también por el Secretario de Justicia de Puerto Rico al ser consultado por la Junta de Retiro. Véase la antes citada Opinión del Secretario de Justicia, Opinión Núm. 16 del año 1961, la cual expresa correctamente la situación.

Dice el Secretario de Justicia en su citada Opinión:

"La Ley de Personal (Ley 345 de 18 mayo 1947) consignó taxativamente los grupos de puestos comprendidos en el Servicio Exento y en el Servicio sin Oposición. También dispuso que el Servicio por Oposición comprenderá los cargos o puestos de todos los demás funcionarios o empleados del Gobierno Estatal existentes o que se creasen en lo sucesivo y que no hubieran sido específicamente incluidos en el Servicio Exento o en el Servicio sin Oposición. Los puestos o cargos de la Junta de Retiro para Maestros no están incluidos en el Servicio Exento ni en el Servicio sin Oposición, que enumeró la Ley. Es por esta razón que, en opinión del Contralor de Puerto Rico, dichos puestos o cargos deban quedar necesariamente incluidos en el Servicio por Oposición. . . ."

Luego de entrar en otras consideraciones continúa diciendo el Secretario de Justicia:

"A la luz de lo expresado, consideramos que hay factores de peso para favorecer la contención de que, a partir de la fecha de vigencia de la Ley de Personal, la única clasificación posible para el personal de la Junta de Retiro para Maestros lo era el Servicio por Oposición, toda vez que dicha entidad no quedó colocada explícitamente en ninguna de las otras categorías."

Nota el Secretario de Justicia que la práctica usualmente seguida por el legislador después de que se aprobó la Ley de Personal ha sido la de consignar las *excepciones* al Servicio por Oposición en lenguaje expreso y directo. Indica que favorece la posición asumida por el Contralor, esto es, que los empleados de la Junta están incluidos en el Servicio por Oposición. Concluye su Opinión con estas palabras: "Mientras tanto, a todos los fines, dichos empleados se deben considerar incluidos en el Servicio por Oposición, salvo cualquiera de ellos que, de acuerdo con las disposiciones de la Ley de Personal, deba por excepción, ser clasificado en otra forma."

■ Al aprobarse la nueva Ley de Personal, Ley Núm. 5 de 14 de octubre de 1975, la Junta de Retiro no fue incluida

entre los Administradores Individuales, quedando por tanto comprendida entre las agencias bajo la Administración Central del Sistema de Personal. Ante esa situación la propia Junta de Relaciones del Trabajo en su citada Decisión y Orden que nos ocupa reconoció que "los empleados de la Junta de Retiro están comprendidos en la Oficina Central de Administración de Personal del Estado Libre Asociado y todos los asuntos relativos a sus empleados se hacen a través de esa agencia gubernamental." Pág. 30 de la Decisión y Orden de Elecciones.

Hay un dato que tiende a indicar que no existe el propósito legislativo de considerar a la Junta de Retiro para Maestros como patrono sujeto a las vicisitudes de la negociación colectiva, sino como una agencia regida y protegida por la Ley de Personal. Es el siguiente: luego de que en el año 1973 la Junta de Relaciones del Trabajo resolvió que la Junta de Retiro no era un patrono dentro del contexto de su ley, se presentó el P. de la C. 984 de 27 marzo 1974, que tenía el propósito de autorizar la negociación colectiva en dicha agencia. La Asamblea Legislativa no aprobó ese proyecto. Demetrio Fernández, *La Junta de Relaciones del Trabajo de Puerto Rico y el Sector Público*, 43 Rev. Jur. U.P.R. 294, 327, escolio 114 (1974).

■ Vimos que a tenor con la Ley de Relaciones del Trabajo no son patronos el Gobierno ni ninguna subdivisión política del mismo pero sí lo son sus instrumentalidades corporativas la Autoridad de Tierras, la Compañía Agrícola, el Banco de Fomento, la Autoridad de las Fuentes Fluviales, la Compañía de Fomento Industrial, la Autoridad de los Puertos, la Autoridad de Comunicaciones, y las subsidiarias de dichas corporaciones. También lo son las empresas similares que se establezcan en el futuro y sus subsidiarias y aquellas otras agencias del gobierno que se dedican o pueden dedicarse a negocios lucrativos.—29 L.P.R.A. sec. 63(2) y (11). Nos resta ver si a tenor con los criterios esbozados en el

caso de la *A.A.A.* v. *Unión de Empleados A.A.A.*, supra, y aun en aquellos sugeridos en el Informe de la Comisión del Gobernador para Estudiar Relaciones del Trabajo en el Servicio Público en Puerto Rico(²) la Junta de Retiro para Maestros es una de esas instrumentalidades corporativas públicas similares al Banco de Fomento, a la Autoridad de Acueductos y Alcantarillados, a la Autoridad de las Fuentes Fluviales, etc. o es una que se dedica a fines lucrativos.

Como vimos el propósito de la Junta de Retiro es el administrar el sistema de anualidades y pensiones de los maestros de Puerto Rico. Su función no es comercial, no opera con ánimo de lucro, sino que es un organismo eminentemente de servicio a los miembros de su matrícula. Tanto el sistema de anualidades y pensiones de los maestros como la Junta que lo administra son instituciones benéficas de la naturaleza de montepío. Pretender que son corporaciones con el carácter comercial que han tomado la Autoridad de las Fuentes Fluviales y otras es desatender la realidad y desnaturalizar los humanos y benéficos propósitos de las dos mencionadas instituciones. Sus empleados están sujetos a la Ley de Personal. La estructura de la Junta está taxativamente determinada por ley, según expresamos anteriormente. La ley le limita el tipo de valores y préstamos en que puede invertir sus reservas. No puede recurrir al mercado general de valores libremente y emitir bonos. No tiene verdadera autonomía fiscal. Sus fondos y desembolsos no están bajo su completo control. Las deducciones a los maestros por las cuotas correspondientes las hace el Secretario de Instrucción Pública y son depositadas en una cuenta bajo control del Secretario de Ha-

---

(²)La Comisión quedó integrada por distinguidas personalidades del campo del Derecho y de la Administración Pública. Fue presidida por el Dr. David M. Helfeld y fueron sus otros miembros el Sr. Adolfo Fortier, la Sra. Milagros Guzmán, el Lic. Vicente Ortiz Colón y el Lic. Marcos A. Ramírez. Dicho Informe fue rendido en 14 de febrero de 1975 al entonces Gobernador, Hon. Rafael Hernández Colón. Véase IX Revista de Administración Pública de la Universidad de Puerto Rico 13 (1977).

cienda. Lo mismo ocurre con la aportación gubernamental. Los desembolsos se hacen por conducto del Secretario de Hacienda. La Junta no tiene facultad para aumentar sus ingresos ni reducir sus desembolsos, pues las cuotas de los maestros y las aportaciones gubernamentales se determinan por ley.

La Junta de Retiro carece de facultad para emplear o despedir a sus empleados, no puede expandir a su matrícula pues la misma está dispuesta por ley; está limitada exclusivamente a los maestros. Todo esto demuestra que no tiene una verdadera autonomía fiscal y ni siquiera administrativa, que la sitúe en la categoría de similar a las corporaciones privadas y públicas que funcionan como negocios. Esto aparte de la consideración central de que su propósito no es operar un negocio lucrativo, como señalamos, sino dar un servicio de carácter social a los maestros.

Si bien hace préstamos estos son préstamos personales, hipotecarios y para viajes culturales, los cuales también son beneficios y servicios a los maestros. En la audiencia pública el Sr. Duamel Vellón, entonces Secretario Ejecutivo Interino de la Junta de Retiro para Maestros, analizó un caso típico del sistema de anualidades y pensiones. No creemos necesario entrar en el detalle pormenorizado de las cifras y otros extremos que allí se produjeron, pero allí se demostró que las anualidades y pensiones le cuestan mucho menos a los maestros que si las comprasen a cualquiera otra organización privada existente. Se expresó que el sistema de retiro tiene un déficit actuarial de alrededor de $665 millones. Vemos mucho de servicio en esta institución pero poco de ánimo lucrativo. De hecho se demostró que la Junta de Retiro no está diseñada, ni organizada, ni facultada para funcionar como una empresa o negocio privado.

En *Junta Rel. Trabajo* v. *Junta del Muelle*, 71 D.P.R. 154 (1950), al interpretarse el citado Inciso 11, el cual define el término "instrumentalidades corporativas" el Tribunal expresó que se refiere a servicios tales como transportación,

electricidad y acueductos (pág. 159). Como hemos visto esas agencias que proveen esos servicios son de una naturaleza muy distinta y operan de hecho económicamente en forma muy distinta a la Junta de Retiro para Maestros. Tienen amplia libertad fiscal y administrativa y su clientela no está limitada por ley. No pueden razonablemente ser consideradas similares a la Junta de Retiro.

*A la luz de lo anterior se expedirá el auto solicitado y se revocará la Decisión y Orden de Elecciones de la Junta de Relaciones del Trabajo de 28 de abril de 1978, objeto de este recurso.*

Seis Jueces votaron "Conforme" y el Juez Presidente y el Juez Asociado Señor Martín concurrieron con el resultado.