En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Eduardo Huertas Alicea etc.<br>    Peticionarios<br><br>    V.<br><br>Compañía de Fomento Recreativo etc.<br>    Recurridos | Certiorari<br><br>98TSPR147 |

Número del Caso: CC-96-0425

Abogado de la Parte Peticionaria:  Lcdo. Sixto Pabón García

Abogados de la Parte Recurrida:     Lcdo. Eliezer Aldarondo Ortiz
                                    Lcda. Isabel López Bras
                                    Lcdo. Cláudio Aliff Ortiz
                                    Lcdo. Antonio Adrover Robles

Tribunal de Instancia: Superior de Guayama

Juez del Tribunal de Primera Instancia: Hon. Ramón Orta Berríos

Tribunal de Circuito de Apelaciones: Circuito Regional VI

Juez Ponente: Hon. Pesante Martínez

Fecha: 11/4/1998

Materia: Daños y Perjuicios

    Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correciones del
    proceso de compilación y publicación oficial de las
    decisiones del Tribunal. Su distribución electrónica se hace
    como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eduardo Huertas Alicea,
et al.

    Demandante y Recurrido

      Vs.               CC-96-425      Certiorari

Compañía de Fomento Recreativo,
et al.

    Demandado y Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 4 de noviembre de 1998.

Nos corresponde resolver si la Compañía de Fomento Recreativo es una agencia o instrumentalidad del Gobierno de Puerto Rico que opera como un negocio o empresa privada, según establecido en la definición de patrono del artículo 5 de la Ley 100 de 30 de junio de 1959, la cual prohíbe el discrimen en el empleo por razón de edad, raza, color, sexo, matrimonio, origen social o nacional, condición social, ideas políticas o religiosas. 29 L.P.R.A. secs. 146 y 151.

Por entender que la Compañía de Fomento Recreativo es una agencia o instrumentalidad del Gobierno que opera como un negocio o empresa

privada, revocamos la sentencia del Tribunal de Circuito de Apelaciones. Confirmamos la conclusión del Tribunal de Primera Instancia de que el traslado del Sr. Huertas Alicea fue discriminatorio y ordenamos su reposición como Administrador del Balneario Punta Guilarte.

I.

Eduardo Huertas Alicea comenzó a trabajar en la Compañía de Fomento Recreativo, en adelante "la Compañía", el 18 de febrero de 1992 como empleado transitorio. En agosto de ese mismo año fue nombrado Funcionario Ejecutivo III en una posición de carrera con clasificación regular, en la que fungía como administrador del Balneario Punta Guilarte en Arroyo. El 1 de marzo de 1993, la entonces Presidenta y Gerente General de la Compañía, señora Marimer Olazagasti, le remitió una carta informándole que sería trasladado a la Oficina Regional del Departamento de Recreación y Deportes, en adelante "el Departamento", en Guayama. Dicho traslado no conllevaba cambio de sueldo ni de clasificación.

Inconforme con el traslado, el Sr. Huertas Alicea, presentó un recurso ante el Comité de Apelaciones de la Compañía. Al no ser acogida la apelación, instó demanda contra la Compañía y la Sra. Marimer Olazagasti en su carácter personal y como Administradora de la Compañía, ante el Tribunal de Primera Instancia. Alegó que el traslado obedecía a razones políticas ya que él era afiliado del Partido Popular Democrático, incluso había sido candidato a alcalde en las primarias del Partido Popular en Arroyo. La Compañía negó que en el traslado mediaran consideraciones discriminatorias y alegó que el traslado obedecía a necesidades de servicio y reorganización.

Estando pendientes los procedimientos en dicho tribunal, el Gobernador de Puerto Rico, Hon. Pedro Rosselló González, mediante la Orden Ejecutiva DE-1995-10 del 26 de enero de 1995, ordenó la reubicación de los empleados de la Compañía y el Departamento a las dependencias de sus respectivas agencias, eliminando la práctica hasta

entonces vigente de entremezclar empleados de ambas agencias en las distintas dependencias. El 15 de febrero de 1995, se le informó al Sr. Huertas Alicea que de acuerdo con lo pautado en la referida orden ejecutiva, estaba siendo trasladado nuevamente al Balneario de Punta Guilarte.

El Sr. Huertas Alicea impugnó este nuevo traslado por considerar que no lo colocaba en las mismas condiciones de empleo que antes tenía, ya que siendo él un Funcionario Ejecutivo III, quedaba bajo la supervisión del Sr. Conde Navarro, Funcionario Ejecutivo II. A petición del Sr. Huertas Alicea, el Tribunal de Primera Instancia emitió una Resolución y Orden paralizando el nuevo traslado al balneario en Arroyo.

Celebrado el juicio en sus méritos, el Tribunal de Primera Instancia falló a favor del Sr. Huertas Alicea. Determinó que la Compañía es una instrumentalidad gubernamental que funciona como empresa o negocio privado, por lo cual está comprendida en la definición de patrono de la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. secs. 146 y 151. Aplicó también la presunción de discrimen por afiliación política de la Ley Núm. 382 del 11 de mayo de 1950[1], al determinar que la carta de traslado fue remitida al Sr. Huertas Alicea el 1 de marzo de 1993, aproximadamente cuatro meses después de la celebración de las elecciones generales en Puerto Rico.

Dicho tribunal consideró que la Compañía no controvirtió la presunción de discrimen de la Ley Núm. 382, y estimó que la prueba presentada demostraba que el Sr. Huertas Alicea ocupaba una posición prominente en el Partido Popular. Concluyó que el traslado obedeció a la afiliación política del Sr. Huertas Alicea y que el mismo había sido

---

[1] Se presumirá que cualquiera de los actos mencionados en la sección precedente obedece a que el empleado o ex empleado está afiliado a determinado partido político cuando el patrono haya realizado el acto sin justa causa o dentro de tres (3) meses antes o seis (6) meses después de haberse celebrado cualquier elección política en Puerto Rico. Esta presunción será de carácter controvertible. Art. 2, 29 L.P.R.A. sec. 137.

discriminatorio, arbitrario e innecesario. Estimó los daños en $10,000.00, cantidad a la cual se aplicaría la penalidad de la doble compensación que procedía, de acuerdo con el artículo 1 de la Ley 382, 29 L.P.R.A. sec. 136 y el artículo 1 de la Ley 100, 29 L.P.R.A. sec. 146. Ordenó también la reposición del Sr. Huertas Alicea a la posición de Administrador del Balneario Punta Guilarte, con todas las funciones y prerrogativas correspondientes al cargo que ocupaba antes del traslado.

Inconforme con este dictamen la Compañía acudió al Tribunal de Circuito de Apelaciones, Circuito Regional VI de Caguas, Humacao y Guayama, el cual revocó la sentencia emitida por el tribunal de instancia. Determinó que para la fecha en que se le remitió al Sr. Huertas Alicea la carta del traslado, la Compañía no era una instrumentalidad pública que operaba como negocio o empresa privada por lo cual no le aplicaban las disposiciones y remedios de la Ley 382 y de la Ley 100. Determinó que la Compañía estaba sujeta en ese momento al control administrativo del Administrador de Parques y Recreos Públicos, y que carecía de autonomía fiscal y presupuestaria.

## II.

La Ley 100 de 30 de junio de 1956, según enmendada, 26 L.P.R.A. sec. 146 *et seq.,* y la Ley 382 de 11 de mayo de 1950, 29 L.P.R.A. sec. 136 *et seq.,* prohiben el discrimen en el empleo por ideas políticas o por afiliación a un partido político. En <u>Cardona Zayas v. Departamento de Recreación y Deportes</u> opinión del Tribunal de 13 de diciembre de 1991, __D.P.R.__ (1991) resolvimos que por tratarse de leyes *in pari materia,* sus disposiciones han de interpretarse armoniosamente. Tanto la Ley 382, como la Ley 100, definen lo que constituye un patrono a los fines de ese ordenamiento. En ambos casos el término patrono: "*incluye toda persona natural o jurídica que emplee obreros, trabajadores o empleados, y al jefe, funcionario, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica.*" Sin embargo, la Ley

Núm. 100, expresamente incluye en la definición *"aquellas agencias o instrumentalidades del Gobierno de Puerto Rico que operen como negocios o empresas privadas."*[2]

A los fines de lograr una interpretación armoniosa de ambos estatutos y de evitar un conflicto en cuanto a quién constituye patrono bajo estas dos leyes, determinamos en <u>Cardona Zayas</u>, *supra*, que la definición de patrono incluida en la Ley Núm. 100, ley posterior, debe prevalecer sobre la de la Ley Núm. 382, ley anterior. Ambos estatutos aplicarán en aquellos casos en que el patrono gubernamental querellado sea una agencia o instrumentalidad del gobierno que opere como negocio o empresa privada.

La Ley 100 no define los términos "negocio" o "empresa privada". Para determinar que significa *"aquellas agencias o instrumentalidades del Gobierno de Puerto Rico que operen como negocios o empresas privadas"* al amparo de la Ley 100 y de la Ley 382, debemos acudir al historial legislativo de la Ley 100 y a su jurisprudencia interpretativa.

En <u>Rodríguez Cruz v. Padilla Ayala</u>, 125 D.P.R. 486, 511 nota al calce 20 (1990), dictaminamos que debía atenderse al significado ordinario de estas palabras. También analizamos el historial legislativo de la Ley 100 a los fines de determinar si la misma aplicaba a los municipios. Al resolver en la negativa determinamos que dicho historial reflejaba que el objetivo principal de la ley es proteger a los empleados de la empresa privada y por excepción extender esta protección a los empleados de las agencias o

---

[2] Art. 6(2) de la Ley Núm. 100 de 30 de junio de 1956, 29 L.P.R.A. sec. 151 (2).

Debemos recalcar que el criterio de *"agencias o instrumentalidades del gobierno que operen como negocios o empresas privadas"* es uno que se repite en varios estatutos y en nuestra Constitución: Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 17 y 18; Ley de Relaciones del Trabajo, Ley Núm. 130 de 8 de mayo de 19455, art. 2, 29 L.P.R.A. sec. 63 (2) y (11); Ley de Salario Mínimo, sec. 33 de la Ley Núm. 96 de 26 de junio de 1956, 29 L.P.R.A. sec. 246e (a) (1), Ley de Seguridad de Empleo en Puerto Rico, sec. 2 de la Ley núm. 74 de 21 de junio de 1956, según enmendada por el art. 1 de la Ley Núm. 85 de 24 de junio de 1971, 29 L.P.R.A. sec. 702 (j).

instrumentalidades del gobierno que operan como negocios o empresas privadas.[3]

De los debates previos a la aprobación de la Ley 100 puede desprenderse que algunos senadores tenían dudas sobre cuáles serían las agencias del gobierno incluidas en dicha frase. Al analizar las discusiones que tuvieron lugar surge que se entendió que la frase se refería a las corporaciones públicas del Gobierno de Puerto Rico.[4]

A la luz del historial legislativo de la Ley 100 queda claro que la intención de la Asamblea Legislativa fue que bajo el término patrono se incluyeran a todas las corporaciones públicas de nuestro esquema gubernamental. Nos corresponde pues, analizar si la Compañía de Fomento Recreativo cumple con los requisitos de una corporación pública.

### III.

Las corporaciones públicas surgieron finalizada la Primera Guerra Mundial como una respuesta a las nuevas tareas a las que se enfrentaron las naciones occidentales al comenzar a llevar a cabo, por sí mismas, actividades económicas que hasta entonces habían estado en manos de empresas privadas y las cuales el gobierno sólo se había limitado a regular. Las corporaciones públicas se estructuraron con un alto nivel de autonomía fiscal y administrativa, con el propósito de evitar el formalismo burocrático gubernamental y facilitar la eficiencia y creatividad.[5]

Hoy en día las corporaciones públicas ocupan un lugar intermedio entre una autoridad pública pura y una Compañía privada. Reciben mediante su estatuto habilitador cierto grado de independencia

---

[3] *Véase* 12 Diario de Sesiones de la Asamblea Legislativa (Senado), T. II, págs. 681-688 (1959).

[4] El Senador Luis Negrón López expresó: "Ahí, entiendo yo, están cubiertas **todas las corporaciones públicas de toda índole del Gobierno de Puerto Rico**." Diario de Sesiones, *supra* a la pág. 685.

[5] *The Public Corporation, A Comparative Symposium,* edited by W. Friedmann, Canada, 1954. *Véase además* Torres Ponce v. Jiménez, 113 D.P.R. 58 (1982).

económica y administrativa. El estado escoge la figura de la corporación pública, como herramienta para implantar una política pública en particular, cuando determina que por ese medio es el que con más alta probabilidad de eficiencia puede llevar a cabo un programa o servicio.

No obstante, a pesar de la autonomía que las caracteriza, las corporaciones públicas no pierden su cualidad de instrumentalidad gubernamental, creadas para responder a propósitos de utilidad pública. Por tal razón, en la medida que llevan a cabo este tipo de función pública, tanto el Ejecutivo como la Legislatura, ejercen, conforme a la ley y la costumbre, diferentes grados de control sobre sus funciones. En Puerto Rico el control gubernamental sobre las corporaciones públicas se plasma mediante la propia ley habilitadora de la corporación pública de que se trate y las otras leyes que directa o indirectamente inciden sobre ésta. Commoloco of Caguas v. Benítez Díaz, supra a la pág. 491.[6]

Así lo hemos reconocido en nuestras decisiones anteriores. En Canchani v. C.R.U.V., 105 D.P.R. 352 (1976), determinamos que la entonces Administración de Parques y Recreos Públicos de Puerto Rico, era una agencia o instrumentalidad gubernamental que ejercía sus funciones en representación del Gobierno de Puerto Rico y no una corporación pública. Para llegar a esta determinación analizamos la ley habilitadora de dicha agencia y establecimos unos criterios a examinarse en el proceso de determinar si una entidad gubernamental es o no una corporación pública. Dichos criterios incluyen: poseer ingresos propios; tener autonomía fiscal para realizar préstamos, emisión de bonos y cuentas bancarias; poseer propiedades; contar con

---

[6] Las corporaciones públicas han recibido también un trato distinto al que tradicionalmente han recibido los distintos departamentos ejecutivos del estado no tan solo en lo que respecta a su organización, sino también en cuanto a su responsabilidad civil por los daños y perjuicios que causan sus agentes, oficiales u empleados en el descargo de sus funciones oficiales. Librotex Inc. v. A.A.A., Opinión del Tribunal de 14 de julio de 1995.

una Junta de Directores; poder aceptar donaciones; y tener capacidad para concertar acuerdos o contratos.

Posteriormente ampliamos estos criterios e incluimos otros factores a considerarse. En A.A.A. v. Unión Empleados A.A.A., 105 D.P.R. 437 (1976) dictaminamos que un tribunal debe examinar en cada caso **la conjunción** de los siguientes factores: si los empleados de la agencia están cubiertos por la Ley de Personal del Estado Libre Asociado; si los servicios prestados por la agencia, por su naturaleza intrínseca, nunca han sido prestados por la empresa privada; si la agencia está capacitada para funcionar como una empresa o negocio privado; si la agencia de hecho funciona como una empresa o negocio privado; el grado de autonomía fiscal de que disfruta la agencia; el grado de autonomía administrativa de que goce; si se cobra o no un precio o tarifas por el servicio rendido (precio que debe ser básicamente equivalente al valor del servicio); si los poderes y facultades concedidos en la ley orgánica de la agencia la asemejan fundamentalmente a una empresa privada; si la agencia tiene o no la capacidad para dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario.

Determinamos que además de estos criterios pueden considerarse otros: la estructura en sí de la entidad; la facultad de la agencia para demandar y ser demandada ilimitadamente; el poder obtener fondos propios en el mercado de valores a base de su récord económico y sin empañar el crédito del Estado Libre Asociado; la facultad de adquirir y administrar propiedades sin la intervención del Estado; el punto hasta donde el reconocimiento a los trabajadores de los derechos a que se refiere el primer párrafo de la Sec. 18 [de la Constitución de P.R.]concuerda o no con el esquema constitucional. **Resolvimos también que ningún criterio es por sí solo determinante y que hay que examinar la conjunción de los diversos factores existentes.** A.A.A. v. Unión de Empleados A.A.A., *supra* a las págs. 455-56.

Aunque los criterios elaborados en A.A.A. v. Unión de Empleados de A.A.A., *supra*, fueron establecidos con el propósito de definir el término "agencia o instrumentalidad del gobierno de Puerto Rico que opera como negocio o empresa privada" en el contexto constitucional de las secciones 17 y 18 del Artículo II de nuestra Constitución, hemos ido extendiéndolos a la interpretación de las leyes que tienen términos similares.

Por ejemplo, en Pagán v. E.L.A., *supra*, utilizamos los criterios establecidos en Canchani v. C.R.U.V., *supra*, y en A.A.A. v. Unión de Empleados A.A.A., *supra*, al determinar que la C.R.U.V., antes y después de la vigencia de la ley que ordenó su disolución, continuaba siendo una corporación pública, aunque estuviese adscrita al Departamento de Vivienda. Igualmente en J.R.T. v. Corporación del Conservatorio de Música, Opinión del Tribunal de 20 de marzo de 1996, intimamos que las guías señaladas en A.A.A., a pesar de haber sido elaboradas para definir cuando una agencia o instrumentalidad del gobierno opera como negocio o empresa privada para fines constitucionales, son convenientes en el análisis estatutario de términos similares.[7]

Hoy nos corresponde determinar si la Compañía es una corporación publica a los fines de estar incluida en la definición de patrono de la Ley 100 y la Ley 382. El análisis a seguirse es acudir en primer lugar a su estatuto orgánico, es decir a su fundamento legislativo, para determinar cuáles han sido los poderes otorgados a dicha entidad y la estructura fiscal y administrativa conferidas por dicho estatuto. En segundo lugar, nos corresponde analizar si los poderes otorgados a dicha Compañía satisfacen los criterios jurisprudenciales anteriormente esbozados. Pagán v. E.L.A., *supra* a las págs. 10006-10008.

---

[7] Este Tribunal ha utilizado los criterios esbozados en A.A.A., *supra*, como guías al definir lo que significa una agencia o instrumentalidad que opera como negocio o empresa privada al amparo de varias leyes. J.M.R. v. J.R.T. 108 D.P.R. 448 (1988) para fines de la Ley de Relaciones del Trabajo; Morales González v. J.R.T., 121 D.P.R. 249 (1988) para fines de la Ley de Salario Mínimo.

IV.

La Compañía de Fomento Recreativo fue creada en virtud de la Ley Núm. 114 de 23 de junio de 1961, 15 L.P.R.A. sec. 501 *et seq.*[8] con el propósito de desarrollar facilidades físicas para ofrecerles a los habitantes de Puerto Rico medios para su recreo y expansión. Para estos efectos la Compañía fue autorizada a desarrollar parques y sitios de recreo público, playas, sitios de veraneo, moteles, parques atléticos, gimnasios, embarcaderos, restoranes, marinas, piscinas públicas, lanchas, botes, deportes de pesca y cacería, y cualquier otra actividad o empresa que directa o indirectamente promoviese los medios para el recreo y la expansión del pueblo.

Posteriormente mediante las Leyes Núm. 127 de 13 de junio de 1980 y Núm. 9 de 23 de julio de 1985 se enmendó el

artículo 3 y se aclaró la gran amplitud del ámbito de acción de la Compañía:

La Compañía creada por esta ley tendrá los siguientes propósitos y objetivos principales:

(1) Desarrollar facilidades físicas para ofrecer a los habitantes de Puerto Rico medios para su recreo y expansión.

(2) Planificar, diseñar, construir, arrendar, operar, mantener y conservar instalaciones y facilidades recreativas y deportivas.

(3) Vender, facturar y cobrar, por los servicios que se presten, a otras agencias, municipios y organismos gubernamentales cuasipúblicos y privados; incluyendo servicios prestados a comités, federaciones y asociaciones deportivas y recreativas.

(4) Dedicar sus recursos al desarrollo de cualquier actividad o empresa que promueva, directa o indirectamente, los medios para el recreo y la expansión del pueblo. 15 L.P.R.A. sec. 503.

---

[8] Posteriormente algunas secciones de la ley habilitadora de la Compañía sufrieron varias enmiendas: la Ley Núm. 6 de 16 de abril de 1963, enmendó el artículo 7; la Ley Núm. 127 de 13 de junio de 1980 enmendó el artículo 3; la Ley Núm. 9 de 23 de julio de 1985 enmendó el artículo 3; y la Ley Núm. 90 de 17 de noviembre de 1993 enmendó los artículos 2,3,4,5,6,7,8,9,10 y 15.

La Exposición de Motivos de la Ley 127 refleja que el propósito de la enmienda fue evitar que se diera una interpretación estrecha y limitada a las facultades de la Compañía. La Asamblea Legislativa entendió en ese momento, que el ámbito de acción de dicha corporación pública era uno de gran amplitud que trascendía el mero desarrollo de facilidades físicas.[9]

Posteriormente la Ley 9 de 23 de julio de 1985 aclaró aun más el alcance de las facultades concedidas a la Compañía por la Asamblea Legislativa. Enmendó la sección 2 del artículo 3 y añadió el inciso 5 para que no quedase duda de que la Compañía goza de facultad para fijar y cobrar tarifas por el uso y disfrute de las facilidades recreativas, así como darlas en arrendamiento y fijar y cobrar el precio del arriendo.[10]

De este historial es evidente que la intención legislativa fue conceder amplias y abarcadoras facultades a la Compañía con el fin de que pueda llevar a cabo adecuadamente las funciones encomendadas. También queda claro que la Asamblea Legislativa rechazó la posibilidad de que se diese una interpretación limitada y estrecha a dichas facultades.

Entre las facultades concedidas por la Ley Orgánica de la Compañía hay algunas que nuestra jurisprudencia ha determinado que son de particular importancia al momento de determinar si una entidad gubernamental opera como un negocio o empresa privada. Entre éstas se destacan aquéllas que proveen para un funcionamiento independiente en el área administrativa y en el área fiscal.

Los poderes conferidos por la Ley Orgánica de la Compañía demuestran que ésta tiene un grado sustancial de autonomía fiscal. Está autorizada para emitir bonos e imponer gravámenes sobre sus ingresos o propiedades, sin hacer responsable al E.L.A., ni a ninguna de sus

---

[9] 1980- Leyes de Puerto Rico, a la pág. 508.

[10] 15 L.P.R.A. sec. 503. Exposición de Motivos de la Ley Núm. 9 de 23 de julio de 1985, *1985-Leyes de Puerto Rico*, a la pág.694.

subdivisiones políticas, del pago del principal o intereses de los bonos emitidos por la Compañía, Art. 5 (i) y (n), 15 L.P.R.A. sec. 505 (i) y (n). Dichos bonos serán autorizados por resoluciones de su Junta de Directores, Art. 11 (b), 15 L.P.R.A. sec. 511 (b). Goza también de la facultad para enajenar o disponer de sus propiedades y para aceptar donaciones, Art. 5 (k) y (j), 15 L.P.R.A. sec. 505 (k) y (j). Tiene completo dominio e intervención sobre cada una de sus propiedades y actividades, incluyendo el poder de determinar el carácter y necesidad de sus gastos y el modo de incurrirlos y autorizarlos, Art. 5(d), 15 L.P.R.A. sec. 505(d). Todos los dineros de la Compañía se mantendrán en cuentas separadas inscritas a nombre de la Compañía, Art.10, 15 L.P.R.A. sec. 510.[11] También es relevante para la independencia fiscal, el poseer la capacidad para reaccionar a las condiciones económicas del mercado y poder manipular los costos y ganancias mediante el aumento de las tarifas por los servicios por los cuales cobra. _Conservatorio_, _supra_ a las págs. 897-898; U.P.R. v. A.P.P.U., 94 J.T.S. 92 a la 12072-73. La Compañía tiene la facultad para variar o aumentar las tarifas que cobra por sus servicios y el canon de arrendamiento de sus facilidades. Art. 3 (5), 15 L.P.R.A. sec. 503 (5).

La Compañía también posee un grado sustancial de autonomía administrativa. Un examen del Artículo 4 (a) y (b) de la Ley Orgánica de la Compañía deja claro que la Compañía es una corporación pública e instrumentalidad del estado **con personalidad y existencia legal separada del Gobierno**, y sus funcionarios, agentes y empleados lo son de la Compañía y no del Gobierno, 15 L.P.R.A. sec. 504 (a) y (b). Los

---

[11] Cabe señalarse que para el momento de los hechos, la Compañía contaba con un fondo particular de ingresos. En virtud de la Ley 113 de 23 de junio de 1961 y de la Ley Núm. 5 de 8 de octubre de 1987, un por ciento del producto de los impuestos recaudados sobre ocupación de habitaciones de hoteles y casas de hospedaje, luego de satisfacer la cantidad que anualmente el Secretario de Hacienda estimase suficiente para atender el pago de principal e intereses de los bonos u otras obligaciones emitidas por el Estado Libre Asociado para beneficio de la Compañía, ingresaba al "Fondo para el Fomento Recreativo de Puerto Rico". Por lo menos una vez al año los dineros de dicho Fondo debían ser transferidos a la Compañía para ser usados en el desarrollo de sus propósitos.

poderes ejecutivos de dicha Compañía se ejercen a través de una Junta de Directores, Art. 4(c), 15 L.P.R.A. sec. 504(c). La Compañía está autorizada para adoptar, enmendar y derogar estatutos para regir sus negocios en general y desempeñar sus poderes y deberes, Art. 5(c), 15 L.P.R.A. sec. 505 (c).[12] La Compañía posee la capacidad para demandar y ser demandada y para hacer los contratos que entienda necesarios al llevar a cabo sus funciones, Art. 5(e) y (f), 15 L.P.R.A. sec. 505 (e) y (f).

Respecto a la administración de su personal[13] es a la propia Compañía a quien corresponde asignar los deberes y compensación de sus empleados, Art. 5(h), 15 L.P.R.A. sec. 505 (h). Los nombramientos, separaciones, ascensos, traslados, ceses, reposiciones, suspensiones, licencias y cambios de categoría se harán de acuerdo con las normas y reglamentos que prescriba el Administrador de Parques y Recreo Públicos **con la aprobación de la Junta de Directores de la Compañía.** Estas normas y reglamentos, **en tanto y en cuanto la Compañía lo estime**

---

[12] Un examen de los reglamentos promulgados por la Compañía sostiene la conclusión de que dicha corporación opera como negocio o empresa privada:

El Reglamento 3291, Reglamento de Subasta de la Compañía de Fomento Recreativo provee las reglas y procedimientos a los que habrá de atenerse la Compañía al adquirir, disponer o arrendar bienes muebles o inmuebles o al llevar a cabo una construcción. Para estas funciones la Compañía se rige por su propio reglamento y no por las leyes y reglamentos sobre subastas que aplican al gobierno central.

El Reglamento 3408, Reglamento de los Centros Vacacionales, Areas de Acampar y Reservaciones, provee para los cánones de arrendamiento a cobrarse en sus centros y áreas de acampar y el método para determinar un aumento de dichos cánones luego de un análisis de costos y beneficios.

[13] La Junta de Relaciones del Trabajo declaró a la Compañía "patrono" para propósitos de la Ley de Relaciones del Trabajo, Ley 130 del 8 de mayo de 1945, 29 L.P.R.A. sec. 61 *et seq.* Resolvió específicamente que los empleados de dicha entidad estaban exentos de la Ley de Personal y que los mismos podían organizarse y negociar colectivamente. También determinó que la Compañía tiene la responsabilidad directa de administrar su personal. Compañía de Fomento Recreativo y Federación Americana de Empleados Públicos U.F.C.W., A.F.l.-C.I.O. y Unión Independiente de Empleados de la Compañía de Fomento Recreativo, P-87-19-D-89-1128.
*Véase* también Opinión 1965-40 del Secretario de Justicia que determinó que la Compañía está capacitada para operar como un negocio o empresa privada y, en consecuencia, está sujeta a la Ley de Salario Mínimo, Ley Núm. 96 de 26 de junio de 1956, 29 L.P.R.A. sec. 245 *et seq.* Debe recalcarse que la Ley de Relaciones del Trabajo de Puerto Rico incluye **expresamente** a la Compañía como patrono. 29 L.P.R.A. sec. 63(2) y (11).

**compatible con sus intereses y el interés público**, seguirán las normas en vigor establecidas por las leyes sobre personal aplicables a los empleados del E.L.A: y serán preparadas **en consulta** con la oficina de personal del Gobierno, Art. 8(a), 15 L.P.R.A. sec. 508 (a).

Del análisis anterior es evidente que la Ley Orgánica de Fomento Recreativo al momento de los hechos otorgaba a la Compañía una serie de poderes y facultades que satisfacen los criterios establecidos por nuestra jurisprudencia para determinar si una entidad gubernamental es una corporación pública. Canchani v. C.R.U.V., *supra.* Los mismos también satisfacen los criterios jurisprudenciales utilizados para determinar si una agencia o instrumentalidad gubernamental opera como negocio o empresa privada. A.A.A. v. Unión de Empleados A.A.A., *supra.*

**V.**

El Tribunal de Circuito de Apelaciones consideró determinante al concluir que la Compañía no era patrono para propósitos de la Ley 100 que al momento de ocurrir el traslado impugnado, el estatuto orgánico de la Compañía disponía que la misma estaba "bajo el control administrativo del Administrador de Parques y Recreos Públicos", y que no fue hasta que entró en vigor la Ley Núm. 90 de 17 de noviembre de 1993 que se cambió el lenguaje de la ley habilitadora de la Compañía, para consignar que dicha Compañía estaba adscrita al Departamento de Recreación y Deportes. Sin embargo, un análisis de la posición que ocupa la Compañía dentro el organigrama gubernamental confirma que la misma operaba como una corporación pública independiente al momento de los hechos. Veamos.

El Art. 4(a) de la Ley Orgánica de Fomento Recreativo expresamente dispone que se crea una corporación pública como instrumentalidad gubernamental del Estado Libre Asociado, bajo el nombre de Compañía de Fomento Recreativo. 15 L.P.R.A. sec. 504(a). El art. 4(b) de dicha ley disponía, en su versión original, que la Compañía estaría sujeta al control administrativo del Administrador de Parques Y Recreos Públicos. 15 L.P.R.A. sec. 504(b).

Sin embargo, en 1980, con motivo de la creación del Departamento de Recreación y Deportes mediante la Ley 126 de 13 de junio de 1980, se le adscribió la Compañía a dicho Departamento. Se enfatizó acto seguido, en la propia ley, que la Compañía **continuaría funcionando como corporación pública con las funciones y disposiciones señaladas por disposición de ley**. Ley Núm. 126 de 13 de junio de 1980, artículo 9; 3 L.P.R.A. sec.42h. Sorprendentemente, no es hasta las enmiendas de la Ley Núm. 90 de 17 de noviembre de 1993, que se enmienda el artículo 2 de la Ley Orgánica de Fomento Recreativo para reflejar este cambio, vigente desde 1980, en virtud de la Ley Orgánica del Departamento.

El tribunal apelativo en su análisis, pasó por alto que en virtud de la Ley Orgánica que creó el Departamento de Recreación y Deportes, la Compañía había cesado de estar "bajo el control administrativo del Administrador de Parques y Recreos Públicos" y había quedado adscrita al Departamento desde la creación del mismo en 1980. Este era el estado de derecho vigente el 1 de marzo de 1993, cuando ocurre el traslado impugnado.

Anteriormente tuvimos la oportunidad de enfrentarnos a la interrogante de si el mero hecho de que se adscribiese una corporación pública a un Departamento gubernamental alteraba la condición jurídica de la corporación pública. En Pagán v. E.L.A., *supra*, determinamos que el hecho de que la C.R.U.V. estuviera adscrita al Departamento de la Vivienda no alteraba su condición jurídica de corporación pública. Procedimos a examinar el estatuto que adscribía la C.R.U.V. al Departamento de Vivienda y resolvimos que éste no había tenido el efecto de suprimir la naturaleza corporativa de la C.R.U.V.[14]

En el caso de autos, un análisis del artículo 9 de la Ley Orgánica del Departamento de Recreación y Deportes, 3 L.P.R.A. sec.42h,

---

[14] *Véase*, Carmen Ramos de Santiago, El Gobierno de Puerto Rico (1970) a las págs. 653-662, que reconoce que diez de las corporaciones públicas existentes en Puerto Rico, al momento de publicación, están adscritas a departamentos y agencias ejecutivas, aunque en la práctica son organismos funcionalmente autónomos. Una de éstas es la Compañía de Fomento Recreativo.

claramente refleja que **la intención legislativa al adscribir la Compañía al Departamento de Recreación y Deportes no fue suprimir la naturaleza corporativa de la Compañía,** ni alterar su condición previa. Dispone el mismo que: "Dicho organismo continuará funcionando como corporación pública con las funciones y programas que se le han señalado por disposición de ley".

Un examen del historial legislativo de dicha disposición confirma esta conclusión. El mismo refleja que el propósito de adscribir la Compañía al Departamento fue el promover que ambas instituciones funcionasen con un máximo de coordinación, evitar la duplicación de esfuerzos y evitar conflictos entre las operaciones gubernamentales.[15] Los debates en el Senado sobre el Sust. del P. del S. 1199, demuestran que los senadores consideraron que la organización corporativa de la Compañía era mucho más flexible para enfrentarse a los problemas que agobiaban a la entonces Administración de Parques y Recreo.[16]

Nada hay en la Ley habilitadora, ni en los reglamentos promulgados por la Compañía que nos lleve a alterar nuestra conclusión de que la Compañía, al momento de los hechos, operaba como un negocio o empresa privada. Aunque hay algunos artículos de la Ley Orgánica de Fomento Recreativo[17] que reflejan alguna injerencia del gobierno central en el funcionamiento de la Compañía, esto no priva a la Compañía de su condición de corporación pública. Lo que se persigue con dichas disposiciones es lograr que el gobierno le preste de modo indirecto un

---

[15] Informe Conjunto de las Comisiones de Juventud y Deportes, de Gobierno y de Hacienda sobre el Sustitutivo al P. del S. 1199, abril de 1980.

[16] XXXIV-Diario de Sesiones, a la pág. 1043 (1980).

[17] La Ley habilitadora dispone que: la Compañía puede solicitar que se adquiera a su nombre propiedad de cualquier forma legal, incluyendo expropiación, Art. 5 (g) y (o); su junta de Directores estaría presidida por el entonces Administrador de Parques y Recreo Público, Art. 4(c); el Contralor examinará de tiempo en tiempo las cuentas y contabilidad de la Compañía Art.10; la Compañía disfruta de exención de contribuciones sobre la propiedad y en la explotación de sus empresas y actividades, Art. 14.

apoyo a la Compañía, ya que el propósito de escoger la estructura de una corporación pública es proveer para un organismo de gran flexibilidad y potencial de desarrollo **dentro** del sistema gubernamental.

V.

Una vez concluido que la Compañía es una corporación pública y a su vez una agencia o instrumentalidad que opera como negocio o empresa privada y por lo tanto un patrono para los fines de la Ley 100 y la Ley 382, procede examinar si hubo discrimen por razones políticas al amparo de estas leyes.

En Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486,506 (1990), determinamos específicamente que la conclusión de hechos del tribunal sentenciador, con base en la prueba, de que un demandante fue discriminado por razones políticas merece gran deferencia en apelación o revisión en ausencia de circunstancias extraordinarias de error manifiesto, pasión, perjuicio o parcialidad. Acosta & Rodas Inc. v. PRAICO, 112 D.P.R. 583, 608 (1982).

De los hechos alegados por las partes, y creídos por el Tribunal de Primera Instancia, se desprende que el Sr. Huertas Alicea alegó y probó que era una persona reconocida dentro del Partido Popular Democrático y que fue asignado a un nuevo puesto donde sus labores eran prácticamente inexistentes. También demostró que fue sustituido por una persona miembro del Partido Nuevo Progresista, el cual pertenecía a una escala inferior dentro de la escala de personal de la Compañía. Además quedó probado que el traslado del demandante se llevó a cabo en marzo de 1993, dentro de los seis meses después de las elecciones generales en noviembre de 1992. Estos hechos, creídos por el Tribunal sentenciador, son suficientes para activar la presunción de discrimen que proveen los Artículos 1 y 2 de la Ley 382:

> Todo patrono que despida, suspenda, rehuse restituir en su trabajo, reduzca el salario, rebaje en categoría aumente las horas de labor o imponga o intente imponer condiciones de trabajo más onerosa a un empleado o ex empleado suyo, o discrimine en cualquier forma o amenace cometer contra él cualquiera de tales actos porque esté afiliado a determinado

partido político incurrirá en responsabilidad civil por suma igual al doble del importe de los daños...29 L.P.R.A. sec. 136.

Se presumirá que cualquiera de los actos mencionados en la sección precedente obedece a que el empleado o ex empleado está afiliado a determinado partido político cuando el patrono haya realizado el acto sin justa causa o **dentro de tres meses antes o seis meses después de haberse cualquier elección política en Puerto Rico. 29 L.P.R.A. sec. 137.**

La Compañía por su parte alegó que el Sr. Huertas Alicea seguía teniendo el mismo sueldo y que su traslado obedeció a necesidades de servicio. No presentó prueba que explicara cuáles eran estas necesidades de servicio, ni cómo, con el traslado, se lograba una mejor utilización de los recursos de la Compañía.

Hemos establecido que simples alegaciones no sirven para rebatir la presunción de discrimen activada por las alegaciones y la prueba del demandante. Ramos v. Srio. de Comercio, 112 D.P.R. 514 (1982); Báez Cancel v. Alcalde Mun. de Guaynabo, 100 D.P.R. 982 (1972); Ibáñez v. Molinos de P.R., Inc. , 114 D.P.R. 42 (1983). La prueba presentada por el Sr. Huertas Alicea y creída por el Tribunal de Primera Instancia estableció una presunción de discrimen político que no fue rebatida por la Compañía.

Por los fundamentos antes expuestos resolvemos que la Compañía de Fomento Recreativo es una agencia o instrumentalidad que opera como negocio o empresa privada para fines de la Ley 382 y la Ley 100. Resolvemos también que se activó la presunción de discrimen de la Ley 382 la cual no fue rebatida por la Compañía. Procede revocar la decisión del Tribunal de Circuito de Apelaciones, y confirmar la sentencia del Tribunal de Primera Instancia en su totalidad.

Se dictará la sentencia correspondiente.


FEDERICO HERNANDEZ DENTON
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eduardo Huertas Alicea,
et al

  Demandante y Recurridos

    v.                        CC-96-425      Certiorari

Compañía de Fomento
Recreativo, et al

  Demandado y Peticionarios


SENTENCIA


San Juan, Puerto Rico, a 4 de noviembre de 1998.


    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se revoca la Sentencia emitida por el Tribunal de Circuito de Apelaciones y se confirma en su totalidad la Sentencia dictada por el Tribunal de Primera Instancia.

    Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Negrón García concurre sin opinión escrita. El Juez Asociado señor Fuster Berlingeri aunque está de acuerdo en que en el caso de autos hubo discrimen por razones políticas, por lo cual el traslado del empleado fue ilegal e inválido, disiente respecto a la aplicación aquí de la Ley 100 del 30 de junio de 1959. El Juez Asociado señor Corrada del Río disintió sin opinión escrita.


                    Isabel Llompart Zeno
             Secretaria del Tribunal Supremo