ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| ADMINISTRACIÓN DE TERRENOS DE PUERTO RICO<br><br>Recurrente<br><br>v.<br><br>UNIÓN INDEPENDIENTE DE EMPLEADOS DE LA ADMINISTRACIÓN DE TERRENOS<br><br>Recurrida | TA2025RA00385 | *Revisión Administrativa,* procedente de la Junta de Relaciones del Trabajo de Puerto Rico<br><br>Caso Núm.: CA-2020-01<br><br>Sobre: Práctica Ilícita |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de enero de 2026.

Comparece la Administración de Terrenos de Puerto Rico ("AT" o "Recurrente") mediante *Revisión Judicial* y nos solicita que revisemos una *Decisión y Orden*, D-2025-1553/2025 DJRT 8, emitida el 3 de noviembre de 2025, notificada el 6 de noviembre de 2025, por la Junta de Relaciones del Trabajo de Puerto Rico ("Junta"). En virtud del aludido dictamen, la Junta declaró Ha Lugar la querella instada por la Unión Independiente de Empleados de la Administración de Terrenos ("UIEAT", "Unión" o "Recurrida") contra la AT, por la comisión de una práctica ilícita al rehusarse a negociar colectivamente con la UIEAT.

Por los fundamentos que proceden, se *confirma* la determinación recurrida.

**I.**

El 21 de enero de 2020, la UIEAT presentó un *Cargo* en contra de la AT, por violaciones al Art. 8 (1) de la Ley Núm. 130 de 8 de mayo de 1945, según enmendada, conocida como la *"Ley de Relaciones del Trabajo de Puerto Rico"* ("Ley Núm. 130-1945"), 29 LPRA sec. Como resultado, el 19 de mayo de 2021, la División Legal de la Junta expidió una querella contra la AT, mediante la cual le

imputó prácticas ilícitas de trabajo. En síntesis, sostuvo que la AT: (1) violó el Art. III del Convenio Colectivo, al contactar directamente a los empleados, y no a la Unión, respecto a la concesión del 18 de noviembre de 2019, con cargo a vacaciones; (2) infringió las disposiciones del Art. XXII del Convenio Colectivo; y (3) obstaculizar la negociación colectiva, a través de representantes elegidos por los empleados, en contravención al Art. 4 de la Ley Núm. 130-1945, 29 LPRA sec. 65. Razonó que la concesión de días feriados constituía materia mandatoria de negociación colectiva, según definido por el Convenio Colectivo vigente entre las partes y las leyes aplicables. Por tanto, expuso que el patrono, al actuar contrario a lo establecido en el Convenio, cometió una práctica ilícita.

Consecuentemente, el 24 de junio de 2021, la AT presentó una *Desestimación de Querella Ultra Vires y Contestación*. Atinente a la controversia ante nos, expuso que el *Cargo* fue radicado de manera tardía, al haber transcurrido el término de treinta (30) días dispuesto por el Reglamento Núm. 7947 de 23 de noviembre de 2010, *Reglamento para el Trámite de Investigaciones y Procedimientos Adjudicativos de la Junta de Relaciones del Trabajo de Puerto Rico*, luego de que los empleados advinieron en conocimiento de la concesión del día libre con cargo a vacaciones.

En respuesta, el 28 de junio de 2021, la División Legal de la Junta notificó su *Oposición a Desestimación*. Adujo que el aludido término aplicaba únicamente a la Ley Núm. 333-2004, según enmendada, conocida como la *Carta de Derechos de los Empleados Miembros de una Organización Laboral* ("Ley Núm. 333-2004"), 29 LPRA sec. 100 *et seq*. Añadió que, mediante el *Cargo*, se imputó violación a los incisos (a), (b), (c), (d) y (f), lo cual fue evidenciado a través de una certificación en donde se indicó que la agencia recurrida consultó directamente a los empleados unionados.

El 2 de agosto de 2021, la AT radicó una *Réplica a Moción en Oposición a Desestimación de Querella Ultra Vires*. Arguyó que, por analogía, aplicaba el periodo prescriptivo de treinta (30) días. Asimismo, expuso que la Unión debía utilizar el mecanismo establecido en el Artículo XXIII (Procedimiento para Atender y Resolver Querellas) del Convenio Colectivo.

El 28 de septiembre de 2021, la División Legal presentó una *Segunda Moción en Oposición a Desestimación*. Reiteró que no aplicaba el término prescriptivo de treinta (30) días. Así también, recalcó que la Junta tenía jurisdicción exclusiva sobre controversias relacionadas a práctica ilícita, ya que la jurisdicción del Negociado de Conciliación y Arbitraje es distinta a la de la Junta.

Aquilatada la *Desestimación de Querella Ultra Vires*, la oposición y sus respectivas réplicas, el 20 de mayo de 2022, se emitió el *Informe y Recomendación del Oficial Examinador*. Mediante este, se recomendó denegar la solicitud de desestimación instada por la AT. Concluyó que: (1) la controversia no estaba prescrita, toda vez que no aplicaba el término de treinta (30) días; (2) la UIEAT no había incurrido en dejadez o negligencia; (3) la actuación de la AT atentó contra el derecho a negociar, cuya infracción constituye una práctica ilícita; (4) no aplica la doctrina de agotamiento de remedios contractuales; (5) la *Querella* no era arbitraria o caprichosa; (6) la AT no demostró que la *Querella* careciera de mérito y que la UIEAT no tuviera derecho a obtener un remedio; y (7) la desestimación es una medida drástica.

Tras varias instancias, el 25 de octubre de 2022, la División Legal dictó una *Resolución*, en virtud de la declaró No Ha Lugar la solicitud de desestimación instada por la AT. De manera particular, determinó lo siguiente: (1) la reclamación no está prescrita; (2) la UIEAT no incurrió en incuria; (3) no aplica la doctrina de agotamiento de remedios; y (4) la *Querella* se emitió conforme a la reglamentación aplicable. Respecto al término prescriptivo, reconoció que la Ley Núm. 130 de 8 de mayo de 1945, según enmendada, conocida como la *Ley de Relaciones del Trabajo de Puerto Rico*, 29 LPRA sec. 62 *et seq.*, no establece un plazo para la presentación de un cargo por práctica ilícita. Dispuso que, a pesar de ello, la UIEAT no contaba con un término indefinido para presentar su reclamo, por lo que, al analizar la controversia era necesario recurrir a la doctrina de incuria. A esos efectos, concluyó que, en vista de que la Unión no incurrió en dejadez o negligencia en el reclamo de su derecho, no era aplicable la doctrina de incuria. Como resultado, dispuso que la controversia no estaba

prescrita. Ante ello, devolvió el expediente al Oficial Examinador para la continuación del trámite adjudicativo correspondiente.

En cuanto a la jurisdicción de la Junta, particularizó que el Art. 7 de la Ley Núm. 130-1945, 29 LPRA sec. 68, establece que la Junta tendrá jurisdicción exclusiva para evitar que cualquier persona se dedique a cualquiera de las prácticas ilícitas enumeradas en el aludido estatuto. Más aún, enfatizó que el referido estatuto estipula que la jurisdicción de la Junta no será afectada por ningún otro medio de prevención o ajuste. Así dispuesto, razonó que la Junta siempre posee jurisdicción exclusiva para atender casos en los que se alegue una práctica ilícita del trabajo, independientemente de que exista un proceso para la disposición de quejas y agravios pactado en un Convenio Colectivo.

Posteriormente, el 28 de febrero de 2023, la AT presentó una *Moción Solicitando Resolución Sumaria*. Sostuvo que, la Ley Núm. 66-2014, según enmendada, conocida como la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, la Ley Núm. 26-2017, según enmendada, conocida como *Ley de Cumplimiento con el Plan Fiscal*, y la Ley Núm. 3-2017, según enmendada, conocida como la *Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico*, impedían conceder días libres sin cargo a vacaciones. En vista a ello, alegó que no incurrió en una práctica ilícita.

Luego de varios trámites, el 6 de junio de 2024, el Oficial Examinador emitió su *Informe y Recomendación del Oficial Examinador*. Concluyó que la AT incurrió en práctica ilícita al negociar directamente con los empleados y excluir a la UIEAT. No obstante, aclaró que, debido a que la legislación vigente, no procedía la concesión del día sin cargo a licencia. Indicó que el otorgamiento del 18 de noviembre de 2019 no fue decretado libre por la gobernadora, sino que delegó a los jefes de agencias y corporaciones públicas la posibilidad de concederlo con cargo. Siendo así, expuso que la AT debía negociar con la UIEAT para determinar si los empleados trabajarían ese día o les sería cargado a sus vacaciones.

Consecuentemente, luego de evaluado el expediente, el 3 de noviembre de 2025, notificada el 6 de noviembre de 2025, la Junta emitió la *Decisión y Orden* aquí recurrida. En virtud del aludido dictamen, determinó lo siguiente: (1) acoger el informe del Oficial Examinador; (2) declarar Ha Lugar la *Querella*; (3) imponer una multa de $5,000.00 en contra de la AT; y (4) emitir un cese y desista de la conducta del patrono. Puntualizó que la AT actuó unilateralmente y sin negociar con la UIEAT la concesión del día libre. Así dispuesto, razonó que la acción de la AT constituyó una violación al Convenio Colectivo y atentó contra los derechos estatutarios y constitucionales de los unionados, lo que constituye una práctica ilícita.

Insatisfecha aún, el 8 de diciembre de 2025, la AT acudió ante nos mediante *Revisión Judicial* y le imputó al foro administrativo la comisión de los siguientes errores:

**La Junta de Relaciones del Trabajo erró al no desestimar la Querella por falta de jurisdicción, al pasar por alto la cláusula de selección de foro pactada por la Unión en el Convenio Colectivo invocado. Tal proceder contraviene directamente el mandato del Tribunal Supremo en San Juan Mercantile Corp. v. J.R.T., 104 D.P.R. 86, 90 (1975), que ordena a la Junta abstenerse de ejercer jurisdicción en estos casos. Véase, además, Martínez Rodríguez v. A.E.E., 133 D.P.R. 986, 994 (1993).**

**Erró la Junta de Relaciones del Trabajo al asumir jurisdicción para atender la Querella presentada tardíamente en violación al término de treinta (30) días establecido en el Reglamento Núm. 7947.**

**Erró la Junta de Relaciones del Trabajo al resolver que la Administración de Terrenos incurrió en la práctica ilícita de no reconocer a la Unión a pesar de que, como cuestión de hechos y de derecho, la decisión de acceder a tomar un día libre con cargo a vacaciones, en las circunstancias aquí presentes, era una enmienda al "programa anual de vacaciones que prepara la Gerencia en consulta con cada empleado unionado", no la Unión.**

**La Junta de Relaciones del Trabajo se equivocó al concluir que la Administración de Terrenos incurrió en una práctica ilícita por no reconocer a la Unión, cuando en realidad, como cuestión de derecho, la negativa a negociar no puede constituir una práctica ilícita si existía un impedimento jurídico que hacía imposible negociar la concesión del día libre con cargo a vacaciones.**

**Erró la Junta de Relaciones del Trabajo al imponer una multa improcedente y excesiva de $5,000.00.**

El 20 de enero de 2025, la UIEAT notificó su *Oposición a Solicitud de Revisión Judicial.* Perfeccionado el recurso y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de resolver.

**II.**

**-A-**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico ("LPAU"), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 96, 113-114 (2023). Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente,* 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas

leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación,* 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde, supra.* Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Hernández Feliciano v. Mun. Quebradillas, supra.*

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

**-B-**

El convenio colectivo es "el acuerdo por escrito entre una organización obrera y un patrono en el que se especifican los términos y condiciones de empleo para los trabajadores cubiertos por el contrato, el estatus de la organización obrera y el procedimiento para resolver las disputas que surjan durante la vigencia del contrato". *C.O.P.R. v. S.P.U.*, 181 DPR 299, 319 (2011). Por ello, el convenio colectivo constituye la ley entre las partes, siempre que no contravenga las leyes, la moral ni la Constitución. *Pérez v. Autoridad de Fuentes Fluviales*, 87 DPR 118, 122 (1963). A su vez, es preciso señalar que los convenios colectivos son contratos y les aplican las normas de interpretación contractual. *C.F.S.E. v. Unión de Médicos*, 170 DPR 443, 450 (2007).

En lo aquí pertinente, la Sección 3 del Artículo XXIII (Procedimiento para Atender y Resolver Querellas) del Convenio Colectivo dispone que "[t]oda queja o querella se tramitará conforme a los mecanismos creados en este Artículo", los cuales se dividen en tres (3) etapas. En específico, la Primera Etapa, estipula que lo siguiente:

**Sección 5: Primera Etapa**

A.    Toda controversia que surja será sometida para su resolución en primera instancia, por escrito, simultáneamente con copia al Director de Recursos Humanos y Relaciones Laborables, al Director de Oficina, o de cualquier centro de trabajo que se cree en el futuro, dentro del término de diez (10) días laborables a partir de la fecha de la acción que dio lugar a dicha controversia.

B.    Toda controversia será sometida por escrito y con acuse de recibo a la Oficina del Director o de cualquier centro de trabajo que se cree en el futuro y esta oficina tendrá la obligación de contestar por escrito y resolver dicha querella durante los diez (10) días laborables después de haberla recibido.

C.    De no estar conforme con la decisión en el caso, se apelará la misma por escrito dentro de los diez (10) días laborables siguientes al recibo de la decisión al Comité de Ajuste (segunda etapa) o de la expiración del término de la primera etapa de este procedimiento para el Director de Oficina, o de cualquier centro de trabajo que se cree en el futuro, contestar, cual de las dos resulte primero.

**Sección 6: Segunda Etapa**

[...]

D.    El Comité de Ajuste deberá reunirse para la discusión de la misma y deberá resolverse en un término que no excederá de diez

(10) días laborables a partir de la fecha de la radicación de la querella en el Comité de Ajuste.

[...]

**Sección 3: Tercera Etapa**

A.     Toda controversia o asunto que no sea resuelto por el Comité de Ajuste podrá ser sometido a la consideración y resolución de un árbitro, en un periodo no mayor de diez (10) días laborables a partir de la fecha de la decisión del Comité de Ajuste. La petición será al Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos por la parte interesada dentro del término aquí establecido y en conformidad con el Reglamento establecido por el Negociado.

[...]

Atinente a la controversia ante nos, la Ley Núm. 130 de 8 de mayo de 1945, 29 LPRA sec. 62 *et seq.*, creó la Junta de Relaciones del Trabajo, como el foro con jurisdicción exclusiva para velar por el cumplimiento de las obligaciones contraídas en virtud de un convenio colectivo, así como evitar que cualquier persona incurra en prácticas ilícitas del trabajo. *F.S.E. v. J.R.T.,* 111 DPR 505, 512 (1981). Sobre la jurisdicción exclusiva de la Junta, el Art. 7 (a) de la Ley Núm. 103-1945, 29 LPRA sec. 68, dispone lo siguiente:

La Junta tendrá facultad, según se dispone más adelante en la presente, para evitar que cualquier persona se dedique a cualesquiera de las prácticas ilícitas de trabajo que se enumeran en el Artículo 8 (29 L.P.R.A. § 69). **Esta facultad será exclusiva y no la afectará ningún otro medio de ajuste o prevención**.

(Énfasis suplido)

El Art. 8 (d) de la Ley Núm. 130-1945, *supra*, establece como práctica ilícita del trabajo el que un patrono "[r]ehúse negociar colectivamente con el representante de una mayoría de sus empleados en una unidad apropiada de negociación colectiva", entre otras. Como corolario, por mandato de ley, la Junta ostenta jurisdicción exclusiva para atender una reclamación relacionada a una disputa obrero-patronal en la cual se alega que se incurrió en una práctica ilícita del trabajo o que alguna práctica incide sobre los derechos concedidos a los empleados unionados. *Plan de Salud U.I.A. v. A.A.A*, 169 DPR 603 (2006); *P.R.T.C. v. Unión Indep. Emp. Telefónicos, supra.* Al respecto, nuestro más Alto Foro ha enfatizado lo siguiente:

La jurisdicción conferida a la Junta por la Ley Núm. 130, *supra*, se extiende tanto a los procedimientos para la certificación de la unidad apropiada como a la aplicación de los mecanismos diseñados por el legislador para garantizar los derechos de organización y negociación colectiva. *P.R.T.C. v. Unión Indep. Emp. Telefónicos*, 131 DPR 171, 188 (1992).

En ese sentido, cuando surge una controversia enmarcada en un conflicto obrero-patronal, relacionado directamente con una actividad protegida por la Ley Núm. 130-1945, *supra*, le corresponde a la Junta la jurisdicción primaria exclusiva sobre el asunto. *Íd.*

Sobre la radicación de cargos, la Regla 301 (Propósito de los cargos, quiénes pueden radicarlos) del Reglamento Núm. 7947 dispone lo siguiente:

Los cargos tienen el propósito de imputar la comisión de prácticas ilícitas en el trabajo según dispuesto por la Ley de Relaciones del Trabajo, así como las violaciones a la Carta de Derechos.

Los cargos para imputar la comisión de prácticas ilícitas podrán ser radicados por el patrono o cualquiera de sus empleados, así como las organizaciones laborales que representen.

Los cargos para imputar violaciones a la Carta de Derechos podrán radicarse por los empleados que pertenezcan a una organización laboral dentro del término de treinta (30) días a partir de la violación de los derechos consignados en dicha ley o partir de que se adviene en conocimiento de la violación.

**-C-**

La prescripción constituye una forma de extinción de un derecho, debido a la inercia en ejercerlo durante un tiempo determinado. *Santiago v. Ríos Alonso*, 156 DPR 181, 188 (2002), citando a *Galib Frangie v. El Vocero*, 138 DPR 560, 566 (1995).

La defensa de incuria se define como "dejadez o negligencia en el reclamo de su derecho, la cual en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad". *Aponte Martínez v. Collazo*, 125 DPR 610, 618 (1990). En ese sentido, la doctrina de incuria procede como defensa cuando la ley no establece un término prescriptivo para el ejercicio de una acción, ya que tiene como fin "hacer justicia, vivificando con la equidad la prescripción establecida por la ley". *Piovanetti Doumont v. Martínez*, 99 DPR 663, 667 (1971).

El Tribunal Supremo ha resuelto que la doctrina "no opera como un simple término prescriptivo en que el mero transcurso del tiempo es suficiente para impedir el ejercicio de la causa de acción", sino, ha enfatizado que "[s]u aplicación requiere, además del transcurso del tiempo, que se haya ocasionado un perjuicio al demandado o que se le haya puesto en desventaja por razón del tiempo transcurrido". *Srio D.A.C.O. v. J. Condómines C. Martí*, 121 DPR 807, 822 (1988). *Íd.*

**-D-**

La Ley Núm. 66-2014, según enmendada, conocida como *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, 3 LPRA sec. 9101 *et seq.*, fue aprobada a los fines de declarar un estado de emergencia fiscal, adoptar un plan para manejar las consecuencias económicas que resulten de la misma y facultar a la Asamblea Legislativa para adoptar aquellas medidas que propendan a proteger la salud, la seguridad y el bienestar público. *Véase*, Exposición de Motivos.

Como parte de las medidas de austeridad establecidas por la Ley Núm. 66-2014, el Artículo 11 (a), 3 LPRA sec. 9117, dispuso que "[d]esde y durante la vigencia de esta Ley no se concederán aumentos en beneficios económicos ni compensación monetaria extraordinaria a los empleados de las Entidades de la Rama Ejecutiva". En lo aquí pertinente, el Artículo 11 (d) (vi), *supra*, expuso que se consideraría como compensación monetaria extraordinaria la "[c]oncesión de días y horas libres con paga sin cargo a licencia alguna". A su vez, el referido estatuto, "en reconocimiento de la importancia de la sindicalización de empleados públicos", estableció un proceso participativo alterno, con el fin de proveerle a las partes un espacio para negociar. Artículo 11 (i) de la Ley Núm. 66-2014, *supra*.

De manera similar, a los fines de tomar las medidas necesarias para dar el más fiel cumplimiento al Plan Fiscal, se aprobó la Ley Núm. 26-2017, según enmendada, conocida como *Ley de Cumplimiento con el Plan Fiscal*, 3 LPRA sec. 9461 *et seq.* Cónsono con lo anterior, el Artículo 1.02 de la Ley Núm. 26-2017, 3 LPRA sec. 9462, dejó sin efecto toda disposición aplicable a la concesión de

beneficios marginales que podrían disfrutar los empleados públicos que fueran en contra del referido estatuto. No obstante, el precitado artículo aclaró que lo anterior "no elimin[ó] el derecho de los sindicados de negociar condiciones de trabajo, salarios y otras condiciones no económicas no contenidas en la presente legislación conforme al ordenamiento jurídico vigente". *Íd.*

### III.

En el recurso que nos ocupa, la agencia recurrente sostiene que la Junta de Relaciones del Trabajo incidió al determinar que: (1) tenía jurisdicción exclusiva sobre la reclamación; (2) no era de aplicación el término prescriptivo de treinta (30) días dispuesto por la Regla 301 del Reglamento 7947; (3) la AT incurrió en una práctica ilícita al no consultar la concesión del día libre con la Unión; e (4) imponer una multa improcedente y excesiva de $5,000.00.

A través del primer señalamiento de error, destaca que, según acordado en el Convenio Colectivo, la Tercera Etapa en el procedimiento para atender y resolver querellas sería una de arbitraje ante el NCA. Por tanto, razona que la Junta carecía de jurisdicción para atender la controversia de epígrafe.

Si bien es cierto que las partes pactaron que la Tercera Etapa sería una de arbitraje ante el Negociado de Conciliación y Arbitraje, la Ley Núm. 130-1945, *supra*, expresamente le confiere a la Junta jurisdicción exclusiva cuando un patrono incurra en cualquier práctica ilícita. El estatuto detalla que tal facultad no será afectada por ningún otro medio de ajuste o prevención. De manera tal que la cláusula de arbitraje pactada mediante el Convenio Colectivo no le aplica a la controversia de marras, por haberse alegado la comisión de una práctica ilícita. Siendo así, el caso debía dilucidarse ante la Junta, conforme exige la Ley Núm. 130-1945, *supra.*

Mediante el segundo señalamiento de error, los recurrentes sostienen que el *Cargo* fue presentado fuera de término, ya que era de aplicación el plazo de treinta (30) días dispuesto en la Regla 301 del Reglamento Núm. 7947.

De entrada, destacamos que la Regla 301 del Reglamento 7947 distingue entre los cargos para imputar la comisión de prácticas ilícitas y aquellos para imputar violaciones a la Carta de Derechos. Conforme dispone la regla, el

término de treinta (30) días únicamente aplica a los cargos para imputar violaciones a la Carta de Derechos. Por el contrario, no confiere un término para la presentación de cargos por la comisión de prácticas ilícitas. Siendo así, no podemos adoptar la postura de la AT al alegar que el término de treinta (30) días aplica tanto a los cargos para imputar violaciones a la Carta de Derechos, como a los cargos por la comisión de prácticas ilícitas.

Ahora bien, la ausencia de un término prescriptivo dispuesto por ley no implica que los cargos por prácticas ilícitas son imprescriptibles. Ante la ausencia de un término prescriptivo, corresponde determinar si aplica la doctrina de incuria, conforme realizó la Junta. Según hemos reseñado, la incuria se define como dejadez o negligencia en el reclamo de un derecho. Al analizar su aplicación, corresponde auscultar: (1) el perjuicio ocasionado a la otra parte; y (2) si se le puso en desventaja, por razón del tiempo transcurrido.

Surge del tracto procesal que el *Cargo* fue presentado el 21 de enero de 2020, es decir, dos (2) meses luego de que la UIEAT adviniera en conocimiento de la comisión de la práctica ilícita por parte de la AT. El transcurso de tiempo entre la práctica ilícita y la presentación del *Cargo* no nos parece uno irrazonable. Más aún, la AT en ningún momento alegó haber sufrido un perjuicio o haber sido puesto en desventaja como resultado del tiempo transcurrido. Por tanto, somos del criterio que, en el caso de epígrafe no es de aplicación la doctrina de incuria. Como corolario, resulta forzoso concluir que la causa de acción no estaba prescrita.

Por entender que están intrínsicamente relacionados, el tercer y cuarto error serán discutidos de manera conjunta. En síntesis, la AT arguye que existían impedimentos jurídicos que le prohibía negociar con la UIEAT. En específico, fundamenta que, según la Ley Núm. 26-2017, *supra,* debía negociar directamente con los empleados la concesión del día libre, debido a que el otorgamiento del día constituía una enmienda al plan anual de vacaciones de cada empleado. Añade que la concesión de un beneficio como el otorgamiento de un día libre sin cargo a vacaciones estaba expresamente vedado por ley.

Como es sabido, debido a la situación económica que atraviesa la isla, se adoptaron una serie de medidas de austeridad. En virtud a ello, toda cláusula económica acordada en el Convenio Colectivo suscrito entre las partes quedó derogada. Asimismo, se eliminó toda compensación monetaria extraordinaria otorgada a los empleados públicos, como, por ejemplo, la concesión de días libres sin cargo a vacaciones, con excepción de aquellos días feriados establecidos por ley.

Ciertamente, en el caso de autos, la AT, por mandato legislativo, se encontraba impedida de conceder el 18 de noviembre de 2019 libre sin cargo. No obstante, las cláusulas no económicas del Convenio Colectivo continuaban vigentes al momento de los hechos. Por consiguiente, las cláusulas relacionadas al reconocimiento de la UIEAT como representante exclusiva de los unionados no fueron afectadas por el mandato legislativo. Como consecuencia, al no negociar con la UIEAT, la AT contravino lo pactado en el Convenio Colectivo, incurriendo así en una práctica ilícita. En otras palabras, la acción de la AT afectó el derecho a la negociación colectiva promovido por nuestra política pública.

A su vez, somos del criterio que la concesión del día con cargo no constituyó una mera enmienda al plan de vacaciones individual de cada empleado, sino una acción que afectó a todos los empleados de manera colectiva. Siendo así, la AT no podía negociar directamente con los empleados el otorgamiento del día, sino con su representante designado y acordado mediante el Convenio Colectivo. Por todo lo cual, resulta forzoso concluir que no existía un impedimento para que la AT negociara con los empleados, a través de la UIEAT, la opción de trabajar el día o concederlo libre con cargo.

Por último, a través del quinto señalamiento de error, la AT sostiene que la multa impuesta resulta improcedente y excesiva. Precisa que, al considerar que la AT actuó de buena fe y conforme a la ley, la imposición de una multa de $5,000.00 resultó en extremo excesiva, injustificada, arbitraria y caprichosa.

Evaluado el expediente, la multa impuesta por la Junta no nos parece improcedente o excesiva. Ello, ya que una sanción administrativa de tal índole

responde directamente a la práctica ilícita cometida y, a su vez, busca desalentar la comisión de prácticas ilícitas futuras. Por tanto, no intervendremos con la discreción de la agencia recurrida.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de esta *Sentencia,* se *confirma* la determinación recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones